Samuel BAUDER, Appellant,

v.

The STATE of Texas, Appellee.

No. 1058–94.

Court of Criminal Appeals of Texas,
En Banc.

May 8, 1996.

Rehearing denied May 8, 1996.

Mark Stevens, John Hrncir, San Antonio, for appellant.

Margaret M. Fent, Asst. District Attorney, San Antonio, Robert A. Huttash, State's Atty., Austin, for the State.

### OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

■ Our previous opinions in this cause are withdrawn. Appellant is charged in County Court at Law Number 8 of Bexar County with the misdemeanor offense of driving while intoxicated. The State's first two attempts to try him for this offense each ended in a mistrial. The second of these occurred when the prosecutor adduced evidence before the jury that appellant committed an act of misconduct other than that charged in the information. Before the State could schedule a third attempt at trial, appellant filed an application for writ of habeas corpus in the trial court, contending that further prosecution is jeopardy barred under the Texas and United States Constitutions.

The habeas judge found that the prosecuting attorney had deliberately adduced testimony of extraneous misconduct for the purpose of prejudicing appellant unfairly before the jury. However, the judge refused to dismiss the prosecution because appellant had moved for the mistrial himself and because the judge did not believe the prosecutor elicited the objectionable testimony for the purpose of goading appellant into making a motion for mistrial. The Fourth Court of Appeals affirmed. *Bauder v. State*, 880 S.W.2d 502 (Tex.App.—San Antonio 1994).

■ Under the United States Constitution, both of the lower courts are right. It is clear that the Fifth Amendment is not of-fended by a successive prosecution for the same offense when the earlier proceeding was terminated at the defendant's request unless the attorney representing the government deliberately set out to provoke the defendant's motion for mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). We have applied this standard of review to double jeopardy claims urged under the United States Constitution, as in *Crawford v. State*, 703 S.W.2d 655 (Tex.Crim.App.1986), and to generic double jeopardy claims, as in *Collins v. State*, 640 S.W.2d 288 (Tex.Crim.App.1982) (panel opinion, rehearing en banc denied), and *Anderson v. State*, 635 S.W.2d 722 (Tex.Crim.App. 1982). But we have never specifically addressed the question whether the Texas Constitution applies in exactly the same way as the United States Constitution to mistrials provoked by the prosecution. We granted discretionary review in the instant cause to decide this important question of first impression. Tex.R.App.Proc. 200(c)(2).

A majority of the panel in the Fourth Court of Appeals considered the matter to have been settled by our opinion in *Collins*, to which it attributed the proposition, "[t]he *Kennedy* standard applies in Texas." *Bauder*, 880 S.W.2d at 503. Of course *Oregon v. Kennedy* and all other definitive interpretations of the United States Constitution by the Supreme Court do apply in Texas, just as throughout the country. But that does not mean that such interpretations govern the meaning of the Texas Constitution.[1] Because we are not called upon in the instant cause to apply federal constitutional law, therefore, neither the United States Constitution nor anything the Supreme Court has to say about it is authoritative. On all questions of Texas law we examine the opinions of other courts, including those of the United States Supreme Court, only insofar as they may reveal the thinking of intelligent jurists on questions of common interest. *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App. 1991).

---

1. In fact, in *Oregon v. Kennedy*, Justice Brennan noted that state courts were free to construe the Oregon Constitution differently from the Supreme Court's interpretation of the United States Constitution. *Oregon v. Kennedy*, 456 U.S. 667, 680–81, 102 S.Ct. 2083, 2092, 72 L.Ed.2d 416 (1982) (Brennan, J., concurring).

The Texas Constitution provides, in article I section 14, that "[n]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." It has long been the law in Texas that a mistrial granted at the defendant's request in a criminal case poses no inhibition under this clause to further prosecution of the same offense in a new proceeding. *De Young v. State,* 160 Tex.Crim. 628, 274 S.W.2d 406 (1954). A criminal defendant may thus consent to have questions of his criminal liability for one offense resolved in more than one trial. But if he does not consent, the Double Jeopardy Clause requires that his culpability be determined in a single proceeding before the jury first selected to try him, if trial is before a jury, unless it becomes manifestly necessary to terminate the proceedings before a verdict is returned in order to assure fairness or efficiency in the trial process. *Torres v. State,* 614 S.W.2d 436, 441 (Tex.Crim.App.1981) (panel opinion). The question we decide today is whether and under what conditions our Double Jeopardy Clause also bars retrial when a defendant obtains a mistrial on account of events deliberately or recklessly brought about by the prosecutor.

■ At the outset, we emphasize that mistrials are an extreme remedy for prejudicial events occurring during the trial process. Even when a prosecutor intentionally elicits testimony or produces other evidence before the jury which is excludable at the defendant's option, our law prefers that the trial continue. Because tactical decisions to offer prejudicial evidence are a normal and, in most respects, acceptable part of the adversary process, it would be counterproductive to terminate the trial every time an objection is sustained. *Marin v. State,* 851 S.W.2d 275, 278 (Tex.Crim.App.1993). Consequently, it is considered a sufficient response to most well-founded objections that the material be withdrawn from jury consideration, if necessary, and that jurors be admonished not to consider it during their deliberations. *Barber v. State,* 757 S.W.2d 359, 362 (Tex. Crim.App.1988), *cert. denied* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861; *Von Burle-*

*son v. State,* 505 S.W.2d 553, 554 (Tex.Crim. App.1974).

■ The adversary system thus depends upon a belief that the declaration of a mistrial ought to be an exceedingly uncommon remedy for the residual prejudice remaining after objections are sustained and curative instructions given. For this reason, our system presumes that judicial admonishments to the jury are efficacious. *Waldo v. State,* 746 S.W.2d 750, 754 (Tex.Crim.App.1988). Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted. *Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268; *Gardner v. State,* 730 S.W.2d 675, 696–97 (Tex.Crim.App.1987), *cert. denied* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206.

■ Ordinarily, when a defendant obtains a mistrial at his own request, a second trial is not jeopardy barred because the defendant's motion for mistrial is considered "a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). But we believe that the right to a trial before the jury first selected is the right to a fair trial before that jury. And although our system does not guarantee the right to a trial free of errors and mistakes, we think it clear that, when a prosecutor's deliberate or reckless conduct renders trial before the jury unfair to such a degree that no judicial admonishment can cure it, an ensuing motion for mistrial by the defendant cannot fairly be described as the result of his free election.

The Texas Double Jeopardy Clause, like its federal counterpart, is meant to restrain the government from subjecting persons accused of crimes to the mental, emotional, and financial hardship of repeated trials for the same offense. *Accord Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). Accordingly, when the government, acting through its rep-

resentatives, purposefully forces termination of a trial in order to repeat it later under more favorable conditions, we agree with the Supreme Court that the Double Jeopardy Clause is violated. But, unlike the Supreme Court, we do not think the prosecutor's specific intent is a relevant aspect of the inquiry.

For example, when a prosecuting attorney, believing that he cannot obtain a conviction under the circumstances with which he is confronted, and given the admissible evidence then at his disposal, deliberately offers objectionable evidence which he believes will materially improve his chances of obtaining a conviction, and the law considers the prejudicial effect of such objectionable evidence to be incurable even by a firm judicial admonishment to the jury, it seems to us that the prosecutor's specific intent, whether to cause a mistrial or to produce a necessarily unfair trial or simply to improve his own position in the case, is irrelevant. In our view, putting a defendant to this choice, even recklessly, is constitutionally indistinguishable from deliberately forcing him to choose a mistrial.

We therefore hold that a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request. Under this rule, the prosecutor is not accountable for mistrials when the trial judge need not have granted the defendant's motion. But he is accountable for mistrials properly granted by the trial judge when the events making a mistrial necessary were of his own deliberate or reckless doing. Under such circumstances, mistrial is not a necessary concession to the exigencies of trial, nor the unavoidable consequence of events beyond the prosecutor's control, but an immediate result of conditions produced by the government's representative which force upon a defendant the expense and embarrassment of another trial unless he is willing to accept an incurably unfair one. When this happens, we think the government should bear responsibility for denying the defendant his right, secured by the Texas Double Jeopardy Clause, to be tried in a single proceeding by the jury first selected.

Our decision to bar retrial under slightly more expansive conditions than those allowed by the United States Supreme Court is based on two important considerations. In the first place, we do not perceive a distinction of constitutional significance between conduct of a prosecuting attorney in which he intends to cause a mistrial and conduct of a prosecuting attorney which he is aware is reasonably certain to result in a mistrial. Making the constitutional rights of a criminal defendant to turn upon such a fuzzy and imponderable distinction as whether the prosecutor actually intended the trial to be terminated or, being aware that his conduct creates a risk that a mistrial is reasonably certain to occur, consciously disregards that risk seems to us far too insensitive a criterion for decision in these cases. In short, we do not believe that the purpose of the constitutional right here in issue really has anything to do with the prosecutor's specific intent.

Secondly, there are practical advantages of a less subjective rule than one which necessarily depends upon proof of the prosecutor's specific purpose. The most obvious of these, acknowledged by the Supreme Court in *Oregon v. Kennedy* and convincingly explicated in the instant cause by the dissenting opinion of Justice Butts in the lower appellate court, is that the conditions under which retrial is barred will generally be clearer when the prosecutor's subjective intent is not an issue, permitting a more certain application of the rule in most cases. Gauging the subjective intent of a prosecutor is not an easy thing to do. And although we do it in a wide variety of contexts where it is universally acknowledged that subjective intent is and ought to be the important issue, *e.g.,* *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that is really not the case here. As we see it, there is no wisdom in a double jeopardy standard of decision which is at once difficult to apply and does little to promote interests protected by the Double Jeopardy Clause.

It bears repeating, however, that conditions calling for the declaration of a mistrial

before submission of a case to the jury should be considered very unusual in any adversary system. Because curative instructions are presumed efficacious to withdraw from jury consideration almost any evidence or argument which is objectionable, trial conditions must be extreme before a mistrial is warranted under Texas law. Accordingly, the line between legitimate adversarial gamesmanship and manifestly improper prosecutorial methods should be difficult for most prosecuting attorneys to cross unless they do it on purpose. Nevertheless, we hold that an attorney representing the State in a criminal action who does manage to cross the line, either deliberately or recklessly, must then forego any further prosecution for the same offense if the trial judge properly grants a mistrial at the defendant's request.

■ Of course, we express no opinion as to whether the prosecutor crossed that line in the instant cause. Nor do we have an opinion whether the cause should be remanded to the habeas court for another evidentiary hearing on this essentially factual question, for additional judicial factfindings, or for both. *Arcila v. State,* 834 S.W.2d 357 (Tex. Crim.App.1992). We do, however, hold that the Fourth Court of Appeals did not employ the legal analysis appropriate to appellant's Texas constitutional claim. We, therefore, reverse its judgment and remand the cause for reconsideration in a manner consistent with this opinion.

WHITE and KELLER, JJ., dissent.

CLINTON, Judge, concurring.

I join the Court's opinion in this cause. I write separately only to address misconceptions at work in the dissenting opinion by Presiding Judge McCormick. As I understand it, he objects that the Court adopts a reading of Article I, § 14 of the Texas Constitution that is different from the United States Supreme Court's interpretation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *Inter alia,* he believes we ought *never* to construe state constitutional provisions *more* protectively than the United States Supreme Court construes its federal analogs. I disagree. In developing his argument, he opines that we are not at liberty to construe our state constitutional provisions *less* protectively. In this he is simply mistaken.

While we need not construe the Texas Constitution differently, there is simply no getting around the fact that we construe it independently. "Even if we find the federal example persuasive, and adopt it as our own, it is still this Court that construes" the provisions of our constitution. *Johnson v. State,* 912 S.W.2d 227, 238 (Tex.Cr.App.1995) (Clinton, J., dissenting). And while we should not construe the provisions of our constitution differently than settled interpretations of the federal constitution simply because we *can,* "no one on the Court should doubt by now *that we can." Id.* I am persuaded by the opinion of the Court today that in this instance, we should.

One reason Judge McCormick believes we should never construe the State constitution more protectively than the federal is that we are not at liberty to construe it *less* protectively, and sauce for the proverbial goose is sauce for the proverbial gander. Op. at 706–707. His premise, however, is mistaken. We are, in fact, "free to disagree with the Supreme Court when it comes to finding 'less protection' in [our] state constitution[ ]." *Id.,* at 707. We have held, for instance, that, unlike the Fourth Amendment, Article I, § 9 brooks no exclusionary rule. *Richardson v. State,* 865 S.W.2d 944, 948, n. 3 (Tex.Cr.App. 1993). A claim of illegal search or seizure brought only under Article I, § 9 would avail the criminal defendant nothing at all were it not for Article 38.23 of the Code of Criminal Procedure, our statutory exclusionary rule. For this reason a defendant is likely to invoke the Fourth Amendment under the incorporation doctrine of the Fourteenth Amendment. But that would not negate the fact that Article I, § 9 of the Texas Constitution is less protective—and nobody, including the United States Supreme Court, can tell this Court otherwise.* Indeed, but for our

---

* Professors Neil McCabe and Catherine Greene Burnett have observed:

"Not always does a state constitution provide greater protection for the suspect or ac-

authority to construe provisions of the state constitution less protectively than their federal counterparts, Judge Mccormick would not be able to suggest, as he does twice in his dissent, that the language of Article I, § 14 does not even contemplate "application to the mistrial setting." Op. at 706, n. 5, and at 707. While obviously I disagree with his suggestion, I acknowledge that the Court would have the authority to construe our jeopardy provision that way, less protective though it may be.

But just as we can construe our constitution less protectively, we can read it more protectively too, if we are persuaded that the language of our provision calls for more, and/or that settled interpretation of the federal constitution is ill-conceived. We did not need *Heitman v. State,* 815 S.W.2d 681 (Tex. Cr.App.1991) to affirm that we must interpret the Texas Constitution independently. That much is self-evident. I cannot imagine any valid reason to relinquish the prerogative that comes with independent interpretation, *viz:* to construe our constitution differently from time to time, as Presiding Judge Onion once said, according to "our own lights." *Olson v. State,* 484 S.W.2d 756, 762 (Tex.Cr. App.1972) (Opinion on rehearing). With these supplemental remarks, I join the Court's opinion.

BAIRD, Judge, concurring.

When a mistrial is granted on the basis of prosecutorial misconduct, the United States Constitution bars retrial only when the misconduct was intended to goad the defendant into moving for a mistrial. *Oregon v. Kenne-*

dy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). However, as Justices Brennan and Marshall noted, *Kennedy* did *not* prevent state courts from interpreting their state constitutions to provide a greater standard of protection. *Id.,* 456 U.S. at 678–79, 102 S.Ct. at 2091. We embrace this question today and hold that the Texas Constitution does, in fact, provide a greater standard of protection.

As Justice Powell's concurrence in *Kennedy* makes clear, it is virtually impossible to prove the prosecutor's intent when engaging in the misconduct that caused a mistrial. *Id.,* 456 U.S. at 678–79, 102 S.Ct. at 2091. Indeed, *Kennedy* 's burden has proven so impossible as to render its holding meaningless. This is so because the burden requires proof of two separate elements of *mens rea.* First, the defendant must prove the prosecutorial misconduct was intentional and, secondly, that the misconduct was engaged in specifically to goad the defendant into moving for a mistrial. While it was perhaps possible to prove the former, it is virtually impossible to prove the latter. Thus, in reality, *Kennedy* and, therefore, the United States Constitution provide *no* protection.[1]

However, today a majority of this Court finds such protection in the Texas Constitution; the defendant must no longer prove that either the misconduct was committed intentionally or that it was committed for the purposes of goading the defendant into moving for a mistrial.[2] Under the Texas Constitution, prosecutors are now responsible for their misconduct without regard for their

cused than does the federal Bill of Rights. Contrary to what many think, state constitutional analysis can provide a lesser degree of protection, and more than one court has so held."

McCabe & Burnett, State Constitutional Criminal Procedure: Cases and Materials (3rd ed. 1991) at 7.

1. My independent research failed to reveal even a single case where the *Kennedy* burden was met.

2. The lead opinion seems to require some form of *mens rea* accompany the misconduct. However, a *mens rea* requirement is unnecessary for two reasons. First, such an inquiry is subsumed

in the trial judge's determination that the conduct was *mis*conduct sufficient to warrant ·a mistrial. Second, and more importantly, if the misconduct was so egregious as to require a mistrial, it does not matter, for double jeopardy purposes, whether the misconduct was intentional, reckless or negligent. Consider this example. Assume that during his closing argument the prosecutor made a direct comment on the defendant's election not to testify and that comment caused a mistrial. In a double jeopardy context it makes no difference whether the remark was *intentionally* made by a seasoned prosecutor or *negligently* made by a prosecutor trying his first case. The important inquiry is whether the misconduct deprived the defendant

*mens rea* when engaging in the misconduct or their reasons for doing so.[3]

With these comments, I join the opinion of the Court.[4]

MALONEY, Judge, concurring.

Today a majority of the Court holds that the rule of law pronounced in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), applying the federal double jeopardy clause is not the only standard under which the State may be precluded from retrial when it has intentionally committed error resulting in mistrial; but that the double jeopardy clause of the Texas Constitution, when the prosecutor is either intentional or reckless in causing a mistrial, will also prevent retrial. The Court defines recklessness as it is defined in the Penal Code, as being "aware but consciously disregard[ing] the risk that an objectionable event for which [the prosecutor] was responsible would require a mistrial at the defendant's request." *Majority opinion* at 699. *See* and *compare* Tex.Penal Code Ann. § 6.03(c).

The dissent takes issue with this holding and with the rule that the Texas Constitution provides greater protection than the double jeopardy clause of the federal constitution. The federal double jeopardy provision derived from the common law notions of *autrefois acquit* and *autrefois convict:*

> The origin and history of the Double Jeopardy Clause are hardly a matter of dispute. See generally [*U.S. v.*] *Wilson; supra,* [420 U.S. 332] at 339–340[, 95 S.Ct. 1013, 1019–1020, 43 L.Ed.2d 232 (1975)]; *Green v. United States,* 355 U.S. 184, 187–

188[, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199] (1957); *id.,* at 200[, 78 S.Ct. at 230] (Frankfurter, J., dissenting). The constitutional provision had its origin in the three common-law pleas of *autrefois acquit, autrefois convict,* and pardon. These three pleas prevented the retrial of a person who had previously been acquitted, convicted or pardoned for the same offense.

*United States v. Scott,* 437 U.S. 82, 87, 98 S.Ct. 2187, 2192, 57 L.Ed.2d 65 (1978). The double jeopardy clause contained in the Fifth Amendment to the United States Constitution reads: "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb[.]" Article I, section 14 of the Texas Constitution provides that

> No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.

The Interpretive Commentary to Article I, section 14, although not authority, is instructive in explaining that the Texas Constitution is broader than the common law:

> The guaranty in this section of the Texas Constitution is broader in scope [than the common law], for not only can a person not be put on trial a second time for an offense of which he has once been acquitted or convicted, but he may not be put on trial a second time for an offense of which he has once been placed in jeopardy. Hence, jeopardy, meaning danger or hazard, can be based upon a prosecution discharged for valid causes without a verdict, while

---

of his valued right to complete his trial before the first jury.

3. I continue to believe that the factors of *Autran v. State,* 887 S.W.2d 31 (Tex.Cr.App.1994), should be considered when determining whether the Texas Constitution provides greater protection than its federal counterpart. Although the opinion of the Court does not follow that format, I am confident the *Autran* factors support today's holding.

4. In closing, I pause to note that one should not automatically assume that an interpretation under the Texas Constitution that, *in theory,* provides greater protection will, *in practice,* provide such protection. This was noted by Justice Rehnquist in *Kennedy* when he stated:

... we are not sure that criminal defendants as a class would be aided [because] knowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be more loath to grant a defendant's motion for mistrial.

*Id.,* 456 U.S. at 676, 102 S.Ct. at 2090. Judge McCormick's dissent exemplifies the fallacy of such an assumption: On the one hand he attacks the majority for providing "criminal defendants 'more protection,' " *post* at 703, and on the other hand he argues the lead opinion "actually provides less protection to criminal defendants than that provided by the Federal Constitution." *Post* at 704.

former conviction and acquittal are based upon verdicts rendered. *Anderson v. State,* 24 Tex.App. 705, 7 S.W. 40 (1886); *Steen v. State,* 92 Tex.Crim. 99, 242 S.W. 1047 (1922).

A person is in jeopardy, then, when he is put on trial before a court of competent jurisdiction on an indictment or information sufficient to sustain conviction, a jury has been charged with his deliverance, the indictment or information read to the jury, and the plea of the accused heard. See *Johnson v. State,* 73 Tex.Crim. 133, 164 S.W. 833 (1914); *Steen v. State,* supra.

TEX. CONST. art. I, § 14 interp. commentary (Vernon 1984) (citations omitted).[1]

With these remarks, I join the opinion of the Court.

McCORMICK, Presiding Judge, dissenting.

" 'This Court is forever adding new stories to the temples of constitutional law, and the temples have a way of collapsing when one story too many is added.' " *Miranda v. Arizona,* 384 U.S. 436, 526, 86 S.Ct. 1602, 1654–55, 16 L.Ed.2d 694 (1966) (Harlan, J., dissenting).

This is another one of those *Heitman*[1] cases where the majority discovers yet another important State constitutional right that until now has gone unnoticed. Under the guise of interpreting our State Constitution, the majority's agenda here is to provide criminal defendants "more protection"[2] than that provided by the United States Constitution by imposing their personal views upon what the majority perceives to be an unenlightened citizenry. See *Autran v. State,* 887 S.W.2d 31, 43–49 (Tex.Cr.App.1994) (McCormick, P.J., dissenting).

In this case, the majority declines to adopt as a matter of State constitutional law the majority holding in *Oregon v. Kennedy.* This holding creates an exception to the federal constitutional rule, which also has been understood to be the rule under the Texas Constitution,[3] that a defendant's successful motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution. See *Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088. The majority opinion in *Kennedy* holds that where a prosecutor intentionally provokes a defendant into successfully moving for a mistrial, double jeopardy principles prohibit a successive prosecution because in such a situation the prosecutor seeks to obtain an advantage by intentionally subverting a defendant's double jeopardy interests in having his guilt or innocence determined before the first trier of fact. See *Kennedy,* 456 U.S. at 669–79, 102 S.Ct. at 2086–92. The concurring opinion in *Kennedy* would extend this exception to situations involving prosecutorial "overreaching" or "harassment." See *Kennedy,* 456 U.S. at 681–93, 102 S.Ct. at 2092–98 (Stevens, J., concurring in the judgment) (to invoke the exception for overreaching, it is sufficient that egregious prosecutorial misconduct has rendered unmean-

---

1. Judge McCormick interprets article I, section 14 as being narrower than the double jeopardy provision of the Fifth Amendment. He says the Texas provision does not seem to have any application in the mistrial setting because the Texas provision "contains a single command" and that command is "that the government cannot prosecute someone for an offense for which he has been acquitted." *Dissenting opinion* at 706 n. 5 (McCormick, P.J., dissenting). In making this argument Judge McCormick apparently makes the assumption that the language at the end of section 14, "after a verdict of not guilty" modifies the entire provision, not just the clause immediately preceding it. To the contrary, this Court has long held that the Texas double jeopardy provision applies after a *conviction,* as well as acquittal. *Ex parte Jewel,* 535 S.W.2d 362, 365

(Tex.Crim.App.1976); *see also* TEX. CONST. art. I, § 14 interp. commentary (Vernon 1984).

1. *Heitman v. State,* 815 S.W.2d 681 (Tex.Cr.App. 1991).

2. "More protection" for criminals also means more restrictions on law enforcement and prosecutorial efforts to protect us from dangerous criminals.

3. *DeYoung v. State,* 160 Tex.Crim. 628, 274 S.W.2d 406, 407 (Tex.Cr.App.1954) cited with approval by this Court when interpreting both the Federal and State Constitutions in *Rios v. State,* 557 S.W.2d 87, 90 fn. 2 (Tex.Cr.App.1977); see also *Demouchete v. State,* 734 S.W.2d 144, 146 (Tex.App.—Houston [1st Dist.] 1987, no pet.); *Moore v. State,* 631 S.W.2d 245, 250 (Tex. App.—Amarillo 1982, no pet.).

ingful the defendant's choice to continue or abort the proceeding).

For purposes of Texas constitutional law, the majority opinion in this case further extends the majority and minority holdings in *Kennedy* to "not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request"—a sort of recklessness standard. The majority claims its holding is "slightly more expansive" than *Kennedy*. This is not so for it is interesting to note that none of the members of the *Kennedy* court would vote for the majority opinion in this case.[4] See *Kennedy*, 456 U.S. at 669–93, 102 S.Ct. at 2086–98. That, more than anything else, should cause the majority to pause before once again kneeling and worshipping before the golden calf of *Heitman*.

In addition, the majority's interpretation of the Texas Constitution actually provides less protection to criminal defendants than that provided by the Federal Constitution or at least that provided in *Kennedy*. This is so because:

"Knowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be more loath to grant a defendant's motion for mistrial. (Footnote Omitted). If a mistrial were in fact warranted under the applicable law, of course, the defendant could in many instances successfully appeal a judgment of conviction on the same grounds that he urged a mistrial, and the Double Jeopardy Clause would present no bar to retrial. (Footnote Omitted). But some of the advantages secured to him by the Double Jeopardy Clause—the freedom from extended anxiety, and the necessity to confront the government's case only once—would be to a

large extent lost in the process of trial to verdict, reversal on appeal, and subsequent retrial. (Citations Omitted)." *Kennedy*, 456 U.S. at 676–77, 102 S.Ct. at 2090.

Of course, trial courts, rather than appellate courts, are in the best position to make the call of whether a mistrial is warranted. See *Kennedy*, 456 U.S. at 676 fn. 7, 102 S.Ct. at 2089–90 fn. 7. That is why appellate courts should and do give great deference to a trial court's assessment of the need for a mistrial. See *id.* The rule the majority adopts today has the real potential of harming a criminal defendant in two ways. First, when a trial court fails to grant a mistrial because of the rule the majority adopts, a defendant loses many of the protections afforded by double jeopardy principles even if he successfully appeals the grounds for which he urged the mistrial. See *id.* Second, because of the deferential standard appellate courts apply to a trial court's assessment of the need for a mistrial, a defendant probably will not be able to overturn on appeal a trial court's decision denying a mistrial when otherwise in all fairness the defendant may have been entitled to a mistrial.

The majority also rationalizes its holding by explaining that there should not be a "distinction of constitutional significance between conduct of a prosecuting attorney in which he intends to cause a mistrial and conduct of a prosecuting attorney which he is aware is reasonably certain to result in a mistrial." The majority then explains their rule has "practical advantages" by "permitting a more certain application of the rule in most cases."

The majority opinion in *Kennedy* adequately responds to these points. See *Kennedy*, 456 U.S. at 674–75, 102 S.Ct. at 2088–89. Remember, the rule the majority adopts prohibits a successive prosecution after a defendant successfully moves for a mistrial "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible

---

4. Judge Mansfield's dissenting opinion cites two cases which, under their state constitutions, more or less adopted the standard set out in the concurring opinion in *Kennedy*. See *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984); *State v. Kennedy*, 295 Or. 260, 666 P.2d 1316 (1983). Both of these cases, however, expressly declined to adopt the sort of recklessness standard the majority adopts today. See *Pool*, 677 P.2d at 271–72; *Kennedy*, 666 P.2d at 1324.

would require a mistrial at the defendant's request." Does everyone understand the exact circumstances under which the majority's rule will apply? I doubt prosecutors will know with any certainty what conduct is prohibited by this rule. And, trial and appellate courts will be just as much in the dark as to what multiple findings will be necessary to resolve the various claims falling under this rule. See *Kennedy*, 456 U.S. at 674–75, 102 S.Ct. at 2088–89. The majority's amorphous rule offers virtually no standards or practical advantages in its application.

The bottom line here is the majority says our Constitution requires the release of a defendant back into society where he successfully obtains a mistrial and meets some amorphous standard that the prosecutor recklessly presented prejudicial evidence before the jury that caused a mistrial. However, it is a prosecutor's job to present "prejudicial" evidence before a jury.

> "Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt. Given the complexity of the rules of evidence, it will be a rare trial of any complexity in which some proffered evidence by the prosecutor or by the defendant's attorney will not be found objectionable by the trial court." *Kennedy*, 456 U.S. at 674–75, 102 S.Ct. at 2089.

Double jeopardy and legitimate prosecutorial interests are not served when this Court assumes the role of second-guessing prosecutorial decisions on which evidence to present and which evidence not to present. The rule set out in the majority opinion in *Kennedy* does not require trial and appellate courts to do this because that rule turns on the prosecutor's intent to provoke a defendant into moving for a mistrial and not on whether a prosecutor recklessly presents "prejudicial" evidence that causes a mistrial. See *Kennedy*, 456 U.S. at 674–75, 102 S.Ct. at 2088–89.

In addition, when a prosecutor injects unfair prejudicial evidence into the proceeding, the defendant's choice "to continue the proceeding despite the taint" is still a meaningful one because "many juries acquit defendants after trials in which reversible error has been committed, and many experienced trial lawyers will forego a motion for a mistrial in favor of having his case decided by the jury." *Kennedy*, 456 U.S. at 685 fn. 15, 102 S.Ct. at 2095 fn. 15 (Stevens, J., concurring). Therefore, there should be a huge "distinction of constitutional significance between conduct of a prosecuting attorney by which he intends to cause a mistrial and conduct of a prosecuting attorney which he is aware is reasonably certain to result in a mistrial." In the former situation, a prosecutor is intentionally subverting a defendant's double jeopardy interests; in the latter situation, the prosecutor is not intentionally subverting a defendant's double jeopardy interests. This should be an important distinction for double jeopardy purposes.

In addition, United States Supreme Court decisions in the mistrial setting have "accommodated the defendant's double jeopardy interests with legitimate prosecutorial interests." See *Kennedy*, 456 U.S. at 682, 102 S.Ct. at 2093 (Stevens, J., concurring). However, the majority does not mention or discuss how their holding strikes any kind of accommodation with legitimate prosecutorial and law enforcement interests. Under the majority's approach to State constitutional interpretation, it seems as if the law exists for the sole benefit and protection of criminal defendants. So, it is irrelevant to the majority that when they use *Heitman* to provide "more protection" to criminal defendants, they also are providing "less protection" to law-abiding citizens. However, the Constitution does not exist solely to protect the rights of the accused. See *Miranda*, 384 U.S. at 537–39, 86 S.Ct. at 1661 (White, J., dissenting) (the most basic function of the criminal law is to provide for the security of the individual and his property) and at 384 U.S. at 518–20 fn. 16, 86 S.Ct. at 1651 fn. 16 (Harlan, J., dissenting):

> "[J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true. (Citations Omitted)."

And, it should come as no surprise that the rule the majority adopts today strikes no accommodation with legitimate prosecutorial

interests. Prosecutors will not know exactly what conduct is prohibited by the majority's rule. This may cause prosecutors to withhold legally admissible evidence reducing their chances for a conviction. See *Miranda,* 384 U.S. at 540–43, 86 S.Ct. at 1662–63 (White, J., dissenting) (criminal trials, no matter how efficient the police are, are not sure bets for the prosecution). And, in those situations where a trial court declines to grant a mistrial, because of the rule the majority adopts, the prosecution will have to go to the expense of another trial if the defendant successfully appeals the grounds for which he urged the mistrial. See *Kennedy,* 456 U.S. at 685–86, 102 S.Ct. at 2094–95. The majority's rule has the real potential of frustrating legitimate prosecutorial efforts to protect the public.

Based on the foregoing, I would adopt for this case the holding of the United States Supreme Court majority opinion in *Kennedy.* It is better-reasoned than the majority opinion and strikes a proper balance between a defendant's double jeopardy interests and legitimate prosecutorial interests. A prosecutor's "recklessness" in "causing" a defense-granted mistrial should not implicate double jeopardy interests.[5]

I also would use this case as an opportunity to lay *Heitman* to rest for good. For at least 75 years this Court generally has followed the lead of the United States Supreme Court in interpreting similar provisions of our Constitution. See, e.g., *Autran,* 887 S.W.2d at 43–49 (McCormick, P.J., dissenting) (and the numerous cases and other authorities cited therein). This court should continue this practice. This approach offers several advantages. It provides for consistency in application and results. In addition, "judicial review can be more precise, but, most important, it gives law enforcement authorities the parameters within which they can legally operate." See *McCambridge v. State,* 778 S.W.2d 70, 76 (Tex.Cr.App.1989), cert. denied, 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990). Also, it is counterproductive to require trial and appellate courts to first engage in some type of federal constitutional analysis and then, having overcome that hurdle, to engage in some type of independent State constitutional analysis.

Also, United States Supreme Court decisions from the 1950s and 1960s found so many rights in the Federal Constitution that are applicable to the States that I really do not see the point in engaging in any independent State constitutional analysis. See *Autran,* 887 S.W.2d at 43–49 (McCormick, P.J. dissenting). There can be no question that these federal constitutional decisions strike a

---

**5.** Since the majority is so dead-set on interpreting our Constitution differently than how the United States Supreme Court interprets the Federal Constitution, the first question they should be asking is whether Article I, Section 14, of the Texas Constitution even applies here. Article I, Section 14, provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, *after a verdict of not guilty in a court of competent jurisdiction."* (Emphasis Supplied). This provision contains a simple command that the government cannot prosecute someone for an offense for which he has been acquitted. But cf. U.S. Const., Amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb").

Article I, Section 14, by its plain language, does not seem to speak or have any application to the mistrial setting. This raises the question of whether Article I, Section 14, actually provides *less* protection than the Federal Constitution leaving it up to other mechanisms by which our citizens deal with prosecutors who intentionally, or even recklessly, cause mistrials. It seems our citizens, speaking to this Court through Article I, Section 14, did not intend for prosecution-caused mistrials to implicate double jeopardy interests.

Though this Court has the power to interpret our Constitution, that does not automatically mean our Constitution provides more protection to criminals than the Federal Constitution provides. See, e.g., *Welchek v. State,* 93 Tex.Crim. 271, 247 S.W. 524 (1923); *Autran,* 887 S.W.2d at 43–49, 44 (McCormick, P.J., dissenting); *Heitman v. State: The Question Left Unanswered,* 23 St. Mary's L.J. at 956–974 (and authorities cited therein). Those whose agenda it is to use *Heitman* to provide more protection to criminals erroneously assume our citizens intended for our Constitution to provide greater protection to criminals than the Federal Constitution. However, it is just as likely that our citizens did not intend for criminals to have under our Constitution all the "rights" that the United States Supreme Court in the 1950s and 1960s said they have under the Federal Constitution. See *Autran,* 887 S.W.2d at 43–49, 44 (McCormick, P.J., dissenting).

proper balance between the freedoms all constitutions, state and federal, are intended to secure and legitimate prosecutorial and law enforcement interests. The federalization of this State's procedural and substantive criminal law in the 1950s and 1960s should, as a practical matter, preclude any independent State constitutional analysis. See *id.*

This point cannot be overemphasized. This Court and the other state courts in the nation since the 1950s and 1960s have had to follow Supreme Court federal constitutional decisions. *Heitman*, in effect, allows us to disagree with the Supreme Court in finding "more protection" for criminals under our State Constitution. However, we are not free to disagree with the Supreme Court when it comes to finding "less protection" for criminals in our Constitution than that provided by the Federal Constitution.

*Heitman*, therefore, is a one-way street. We should not use *Heitman* to find "more protection" in our Constitution unless the states are free to disagree with the Supreme Court when it comes to finding "less protection" in their state constitutions. For example, in this case, one might disagree with the majority opinion in *Kennedy* and argue that intentionally provoked mistrials by the prosecution do not implicate double jeopardy interests under our Constitution because a defendant still has a choice of continuing the proceeding despite the taint and preserving his objection for appeal, and our citizens have other mechanisms for dealing with prosecutors who intentionally cause mistrials. See *Kennedy*, 456 U.S. at 685–86, 102 S.Ct. at 2094–95 (Stevens, J., concurring). Such a rule arguably might strike a proper balance between a defendant's double jeopardy interests and society's interest in obtaining a verdict of guilt or innocence. However, with the federalization of this State's criminal law in the 1950s and 1960s, this Court is not really free to adopt such a rule under our Constitution.

Judge Clinton's concurring opinion opines that we are at liberty to construe the Texas Constitution "less protectively" than the Federal Constitution. Technically, he is correct. But, as a practical matter, this power is illusory. My point is that the federalization of this State's criminal law in the 1950s and 1960s has, in effect, preempted any independent State constitutional analysis on matters of common subject. Justice Hecht of the Texas Supreme Court said it best when he noted, " 'virtually all New Federalism proponents are motivated by the bare desire to achieve a liberal political agenda.' " See *Davenport v. Garcia*, 834 S.W.2d 4, 43 (Tex. 1992) (Hecht, J., concurring in the judgment). He also said that "a non-legal influence has been brought to bear on judicial decision making." *Id.* I could not agree with him more.

Practically, *Heitman* frustrates legitimate prosecutorial interests without promoting any of the interests or values our Constitution is meant to protect. And, *Heitman* promotes contempt for majoritarian political processes by encouraging appellate judges to read their personal views into our Constitution which is an impermissible basis for constitutional interpretation and a usurpation of legislative power. See *Autran*, 887 S.W.2d at 43–49 (McCormick, P.J., dissenting). And that is exactly what is going on here. One need only count the number of times the majority uses "we believe," "it seems to us," "in our view," or "we think" to realize the basis of their decision is nothing more than their personal views about how things ought to be. I would leave it up to our citizens through the legislative process to make these types of determinations.[6]

---

**6.** In at least one other case I have seen here, a defendant claimed we should interpret our Constitution to provide more protection to criminals than the Federal Constitution simply because in recent years the Supreme Court has been perceived as becoming more "conservative." This is not a good reason, but one the majority apparently is now willing to accept, to interpret our Constitution differently from how the United States Supreme Court interprets the Federal Constitution. See, e.g., *McCambridge*, 778

S.W.2d at 77 (Teague, J., dissenting) (because this Court "does nothing less than adopt in principle *what the present archconservative Supreme Court's* majority has already written and held, in its construction of the federal constitution, I respectfully dissent") (Emphasis Supplied).

However, constitutional interpretation is not a political question. After stripping away all of its moralistic rhetoric about this Court's duty to breath life into our Constitution and not to

Instead of taking another leap into the *Heitman* quagmire, this Court ought to be exercising judicial restraint and reaffirming our prior cases that this Court generally will follow the lead of the United States Supreme Court in interpreting our Constitution. See *Autran*, 887 S.W.2d at 43–49 (McCormick, P.J., dissenting). Principles of *stare decisis* alone require this. See *id.* If citizens are unhappy with our holdings, they can change them either through the legislative process or Constitutional amendment. For the most part, they have not exercised this option for at least 75 years when this Court has said it generally will follow the lead of the United States Supreme Court in interpreting our Constitution. On the contrary, I can only recall situations where our citizens have acted when this Court refused to follow the Supreme Court's lead. See, e.g., *Garcia v. State*, 829 S.W.2d 796, 800–803 (Tex.Cr.App. 1992) (Clinton, J., concurring). It is one thing for our citizens through the legislative process to require us to do a certain thing when we have refused to do so by judicial fiat. It is quite another thing for our citizens through the legislative process to reverse this Court's judicial fiats which is what they might do to the majority's opinion in this case.

All the reader really needs to know about *Heitman* is that it is intended to provide more rights to criminal defendants.

"As a consequence, there will not be a gain, but a loss, in human dignity. The real concern is not the unfortunate consequences of this new decision on the criminal law as an abstract, disembodied series of authoritative proscriptions, but the impact on those who rely on the public authority for protection and who without it can only engage in violent self-help with guns, knives and the help of their neighbors similarly inclined. There is, of course, a saving factor: the next victims are uncertain, unnamed and unrepresented

in this case." *Miranda*, 384 U.S. at 542–43, 86 S.Ct. at 1663 (White, J., dissenting).

Finally, it should not go unnoticed what appears to be a substantial change in the law the majority opinion has made with respect to how this Court interprets the Texas Constitution. In *Heitman*, this Court announced what actually has been the rule since Texas became a State: this Court is not bound by United States Supreme Court decisions in interpreting the Texas Constitution. See *Heitman*, 815 S.W.2d at 691. But, *Heitman* failed to provide any real guidance or framework on how to analyze "independent state grounds" issues. See *id.*

However, in *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 585 (Tex.Cr.App. 1993), a majority of this Court agreed "that the primary goal in the interpretation of a constitutional provision is to ascertain and give effect to the apparent intent of the voters who adopted it." This standard is more or less an "original intent" framework that does not embroil this Court into becoming a "super-legislature" and intruding upon the Legislature's "lawmaking" power. See *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr. App.1991). And, there is nothing new or radical about this approach. For example, when courts interpret a statute, their duty is to give effect to the intent of those who enacted the statute. See *id.* When courts interpret a contract or a will, their duty is to give effect to the intent of the parties to those documents. It should be no different when this Court interprets a constitutional provision; we should give effect to the intent of the voters who adopted it. See *Lanford*, 847 S.W.2d at 585.

More or less consistent with *Lanford* and the "original intent" theory of constitutional interpretation, a plurality of this Court in *Autran v. State*, 887 S.W.2d 31, 37 (Tex.Cr. App.1994), set out various factors for this Court to consider when interpreting the Texas Constitution. These factors include a textual examination, the Framers' intent, the

"blindly" follow Supreme Court precedent in interpreting our Constitution, what *Heitman* really boils down to is an attempt by those who, having lost their ability to persuade American majorities and a majority of the "archconservative" Supreme Court, to expand the sway of state

appellate judges by judicially legislating what they consider to be socially desirable results. See *Autran*, 887 S.W.2d at 43–49 (McCormick, P.J., dissenting). And, the majority seems all too willing to accommodate this contemptuous view of popular sovereignty.

history and application of the constitutional provision at issue, comparable jurisprudence from other states, and practical policy considerations behind the constitutional provision at issue.[7] See *id.* These factors are not even mentioned in the majority opinion in this case.

The standard for constitutional interpretation the majority adopts here has degenerated from the one set out in *Lanford* to "we do not think," "it seems to us," "in our view," "we think," "we do not perceive," "we do not believe," and "as we see it." This is a lawless standard.

"Whether the agenda is 'liberal' or 'conservative' or something else altogether makes no difference. The vice is that a non-legal influence has been brought to bear on judicial decision making. This is not 'new federalism'; it is 'new judicialism.'" *Davenport v. Garcia,* supra, at 43 (Hecht, J., dissenting).

I respectfully dissent.

MANSFIELD, Judge, dissenting.

The issue presented in this cause is whether Article I, Section 14 of the Texas Constitution provides greater protection against double jeopardy than the Fifth Amendment to the United States Constitution. In my opinion, it does not.

Appellant was charged with misdemeanor driving while intoxicated. His first trial ended in a mistrial. His second trial also ended in a mistrial, granted at his request, after the State introduced evidence before the jury of a criminal act committed by appellant other than that charged in the information. Before the State could try appellant for the third time, appellant filed an application for writ of habeas corpus, alleging the third trial was jeopardy barred under both the United States and the Texas Constitutions.

The habeas judge found that while the State did adduce testimony of the extraneous criminal act improperly in order to prejudice the jury against appellant, it did not do so with the intent to goad appellant into moving for a mistrial. Furthermore, appellant moved for the mistrial. The habeas judge refused to dismiss the prosecution against appellant. The Fourth Court of Appeals affirmed. *Bauder v. State,* 880 S.W.2d 502 (Tex.App.—San Antonio 1994).

The Fifth Amendment to the United States Constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; *nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb,* nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation." (Emphasis added.)

Texas Constitution Article I, Section 14 provides: "Double Jeopardy. No person for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

In *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the United States Supreme Court held the Double Jeopardy Clause of the Fifth Amendment generally does not bar the retrial of the defendant following the granting of a mistrial upon the defendant's own motion. "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause ... Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant

---

7. My dissenting opinion in *Autran* contended, among other things, that the plurality did not follow the approach for constitutional interpretation they claimed to adopt, and that the plurality merely substituted its judgment for that of accountable law enforcement officials on what the plurality considered to be a "better" or a "more reasonable" policy on how law enforcement officials should conduct inventories. See *Autran,* 887 S.W.2d at 43–49 (McCormick, P.J., dissenting).

raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Kennedy,* 456 U.S. at 675–76, 102 S.Ct. at 2089. Therefore, appellant, to prevail under the federal constitutional standard established by *Kennedy,* is required to show that the prosecutorial conduct giving rise to his successful motion for mistrial was intended to provoke or "goad" him into moving for a mistrial. Appellant concedes, on page fifteen of his brief in support of his petition for discretionary review, that he cannot prevail under the federal standard.

Appellant avers nonetheless that Article I, Section 14 of the Texas Constitution provides greater protection than the Double Jeopardy Clause of the Fifth Amendment.

This Court, in *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991), held it was not bound to construe state constitutional provisions in the same way that the United States Supreme Court construes comparable provisions in the federal constitution. We held that in interpreting Article I, Section 9 of the Texas Constitution, we will not be bound by Supreme Court decisions addressing the comparable Fourth Amendment issue. *Heitman,* at 690. Thus, we are free to find that provisions of the Texas Constitution provide more rights to the citizens of Texas than under comparable provisions of the federal constitution.

An examination of the Fifth Amendment and Article I, Section 14 shows the two are very similar. We have previously stated that "conceptually the State and Federal double jeopardy provisions are identical." *Stephens v. State,* 806 S.W.2d 812, 815 (Tex.Crim.App. 1990). See also *Phillips v. State,* 787 S.W.2d 391, 393, n. 2 (Tex.Crim.App.1990). Appellant's contention that the Texas Constitution provides more double jeopardy protection than its federal counterpart is not supported by its language.

Appellant concedes in his brief that he can find no indication the framers of the Texas Constitution intended to provide greater protection from double jeopardy than that provided by the Fifth Amendment.

Both the State's and the Appellant's briefs recognize that the Bill of Rights of the Texas Constitution has its origins in various sources, such as the British common law, Spanish law, the U.S. Constitution and the constitutions of several states.

Several state supreme courts have explicitly adopted the *Oregon v. Kennedy* standard under their state constitutions, including Virginia (*Robinson v. Commonwealth,* 18 Va. App. 814, 447 S.E.2d 542 (1994)); Kentucky (*Stamps v. Commonwealth,* 648 S.W.2d 868 (Ky.1983); North Carolina (*State v. White,* 322 N.C. 506, 369 S.E.2d 813 (1988)). We have also held that we will use a standard substantially identical to the *Oregon v. Kennedy* standard in cases where appellant claims jeopardy after having asked for and been granted a mistrial. *Anderson v. State,* 635 S.W.2d 722 (Tex.Crim.App.1982).

The only two states that have adopted appellant's position—that mere prosecutorial indifference to appellant's rights resulting in a mistrial should prevent a retrial on double jeopardy grounds—are Oregon (*State v. Kennedy,* 295 Or. 260, 666 P.2d 1316 (1983)); and Arizona (*Pool v. Superior Court,* 139 Ariz. 98, 677 P.2d 261 (1984)). In my opinion, appellant has not, based on jurisprudence from other jurisdictions, provided adequate cause for us to reverse our prior decision in *Anderson* to adopt the *Oregon v. Kennedy* standard.

The *Oregon v. Kennedy* standard, which provides that a retrial is not barred by the federal double jeopardy clause of the Fifth Amendment following granting of a mistrial on appellant's motion absent a showing the State intended to goad him into requesting a mistrial, has worked effectively since it was set forth thirteen years ago. Appellant's suggested indifference standard—if adopted—may well lead to unfortunate consequences. In my opinion, it is based on a sort of negligence theory and could lead to a bar to retrials following granting of mistrials due to aggressive prosecutorial tactics made in good faith in the heat of trial, but found by trial judges to have prejudiced defendants' rights. In effect, the majority opinion could very well lead to a bar to a retrial, on double jeopardy grounds, in any case where, due to

prosecutorial error that the trial court determines cannot be cured by a jury instruction, a mistrial is granted on the defendant's motion. Requiring, in order to avoid a retrial and thus have the charges against him dismissed, a criminal defendant to show the State intentionally goaded him into moving for a mistrial is not an unreasonable standard and it has worked to protect both the rights of a criminal defendant not to be subjected to unjustified multiple trials as well as the right of the State to a full and fair opportunity to present its case against that defendant.

For the reasons above, it is my opinion that Article I, Section 14 of the Texas Constitution provides the same protection against double jeopardy as the Fifth Amendment to the United States Constitution. Furthermore, this Court should continue to apply the standard established in *Oregon v. Kennedy* in cases where appellants allege retrials are jeopardy-barred following granting of mistrials on appellants' own motions.

I respectfully dissent.