COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-04-326-CR

 

 

SHAZAD SHARIF                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

Appellant Shazad Sharif
pleaded guilty to the offense of intoxication assault, and a jury assessed his
punishment at three and one-half years= confinement.  In a single
issue, Sharif complains that the trial court erred by denying his motion for
mistrial.  We affirm.








II.  Factual and Procedural Background

On March 26, 2003 around 2:00
a.m., Rebecca Abdallah, William Treese, and Adrian Brady, all friends, traveled
southbound on Interstate 35 through Denton County in Abdallah=s Volkswagon Passat.  Treese
drove, Abdallah sat in the passenger seat, and Brady sat in the rear seat
behind the driver.  The Passat, traveling
between sixty-five to seventy miles per hour in the left lane, began to pass a
Volkswagon Beetle when Treese observed in his rear-view mirror the headlights
of a vehicle approaching behind them at a high rate of speed.  Within a few moments, the vehicle, an
Infinity Q45 driven by Sharif, collided into the rear of the Passat, which
exploded into flames, struck the median, and bounced back into the lane of
traffic.  After the Passat came to rest,
Treese and Brady escaped from the wreckage and removed Abdallah from the
burning vehicle.  The collision caused
the driver of the Beetle to lose control of his vehicle momentarily and to veer
off the highway.  Sharif, lying on the
ground outside of his Infinity, rolled off of the highway and onto the grass
shoulder.








Paramedics and police arrived
at the accident scene shortly thereafter. 
A Denton Police Department officer testified that Sharif had bloodshot
eyes and a strong odor of alcohol on his breath.  Sharif later stated that he had been drinking
alcoholic beverages earlier that night, and a blood sample that he voluntarily
provided to police a few hours after the accident indicated a blood-alcohol
concentration of 0.19 grams of alcohol per 100 milliliters, twice the legal
limit.  Officers arrested Sharif after he
was treated for an injury to his hand.

Investigators determined that
Sharif=s vehicle was traveling between 90 and 105 miles per hour at the time
it collided with Abdallah=s
Passat.  Treese and Brady suffered minor
injuries as a result of the accident, but Abdallah suffered third degree burns
to a third of her body, necessitating multiple skin graft surgeries and
physical rehabilitation. 








Sharif pleaded guilty and
elected to have a jury assess his punishment. Before voir dire began, the trial
court granted Sharif a motion in limine excluding evidence regarding a
subsequent traffic accident believed to have been caused by onlookers to this
accident.  Two people apparently died in
the second accident.  During the State=s case-in-chief, the jury viewed State=s Exhibit 2, a videotape of interviews conducted by one of the police
officers after the initial accident.  In
the tape, a witness stated, AI hope there=s not two
people dead there.@  Defense counsel objected immediately, the
trial court stopped the tape, and the jury was removed from the courtroom.  The trial court subsequently sustained Sharif=s objection but denied his request for a mistrial.  The trial court further instructed the jury
that they were to disregard the final two minutes of the videotape.  During deliberations, the trial court
received a number of questions from the jury requesting information about
probation. 

III.  Request for Mistrial

Sharif argues that the trial
court erred by denying his request for a mistrial because the statement heard
by the jury in State=s Exhibit 2
likely influenced its decision to forego probation and assess punishment at
three and one-half years=
confinement.  Sharif also argues that the
State referenced the Akillings@ (deaths occurring during subsequent accident) during closing
arguments, thus emphasizing the excluded evidence.








When the trial court sustains
an objection and instructs the jury to disregard but denies a defendant=s motion for mistrial, the issue is whether the trial court abused its
discretion by denying the mistrial.  Hawkins
v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Primes v. State,
154 S.W.3d 813, 814 (Tex. App.CFort Worth 2004, no pet.).  Only
in extreme circumstances, in which the prejudice is incurable, will a mistrial
be required.  Hawkins, 135 S.W.3d
at 77.  Such a circumstance exists when
the conduct is Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile.@  Id.; see also
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert.
denied, 124 S. Ct. 2837 (2004). 
Generally, an instruction to disregard cures any prejudicial
effect.  Wesbrook v. State, 29
S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001).  Only when it is apparent that an
objectionable event at trial is so emotionally inflammatory that curative
instructions are not likely to prevent the jury from being unfairly prejudiced
against the defendant is a trial court required to grant a mistrial.  Bauder v. State, 921 S.W.2d 696, 698
(Tex. Crim. App. 1996).








Here, the trial court stopped
the videotape immediately after the complained-of statement was made, and it
was not repeated or referenced after proceedings continued.  The record indicates that the State did not
intentionally violate the motion in limine, thus deliberately exposing the jury
to the prohibited portion of the videotape.[2]  The record further demonstrates that the
State did not in any manner refer to the deaths in its closing argument Aby way of innuendo,@ as Sharif argues.  The trial
court instructed the jury to disregard the final two minutes of the videotape,
and there is nothing in the record to indicate that the jury failed to follow
the instruction.  Consequently, we must
presume that the instruction was effective. 
See id.  Finally, Sharif=s argument that the videotape evidence affected the jury=s decision to assess punishment as confinement instead of probation is
likewise not supported by the record; it is not unusual for a jury to send
questions to the trial court during deliberations inquiring into the specifics
of probation.  Thus, our review of the
particular facts and circumstances of this case lead us to conclude that the statement
was not so prejudicial that expenditure of further time was wasteful and
futile.  See Hawkins, 135
S.W.3d at 77.  Accordingly, we hold that
the trial court did not abuse its discretion by denying Sharif=s request for a mistrial.  We
overrule Sharif=s sole
issue.

IV.  Conclusion

Having overruled Sharif=s sole issue, we affirm the
trial court=s
judgment.  

 

 

PER CURIAM

 

PANEL
F:    MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
November 3, 2005











[1]See Tex. R. App. P. 47.4.





[2]Outside the presence of the jury,
the trial court stated, AI know you didn=t do that intentionally, Mr.
Schultz.  There=s no doubt in my mind you didn=t do it intentionally.@