Sidney Earl **BRASHEAR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–97–00708–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1998.

Rehearing Overruled March 9, 1998.

John V. Elick, Bellville, David A. Carp, Houston, for Appellant.

Daniel W. Leedy, Cynthia M. Ruiz, Bellville, for Appellee.

Before SCHNEIDER, C.J., and HEDGES and NUCHIA, JJ.

## OPINION

NUCHIA, Justice.

Sidney Earl Brashear appeals the denial of pretrial habeas corpus relief.

### Facts

A grand jury indicted Brashear for first degree murder, and he pled no contest to manslaughter. The court found him guilty and, about a month later, commenced his jury trial on punishment. The State's first witness was Deputy Richard Holloman, chief investigator for the Austin County Sheriff's Department. The State rested its case on the first day of trial. When Holloman finished testifying, he was released from the rule and observed the other witnesses testifying. The next morning, Holloman was observed conversing with two of the jurors. Brashear moved for a mistrial. At the conclusion of the hearing on the motion, the court declared a mistrial for the jurors' failure to follow the court's instructions.

At the hearing on the motion for mistrial, the bailiff testified that on the second day of trial, in the morning, before he put the jury in the box, he saw Holloman conversing with two of the jurors for a period of time from five to 10 minutes.

Holloman testified that by the door going into the courtroom, he had a conversation with two jurors, whom he did not know, about the weather, a business being bulldozed, and the fact that there were no new leads in a quadruple murder case he was investigating. Regarding the quadruple murder case, he discussed nothing further than the lack of new leads. Before that day, he had been told not to discuss the case in which he was testifying with jurors, but it was his view that he could discuss other things with them. He did not think his conversation with them could influence them as it was just a casual conversation about the weather.

Juror Canik testified in the conversation he asked Holloman how he liked his new boss, to which Holloman responded that he liked him fine, and that he had made some changes. In response to his question about leads in the multiple murders, Holloman had said that they get calls all the time, and they were working on them. Canik testified they did not discuss anything about the case at hand, and that he understood the judge's instructions about not talking to witnesses to apply to the case at hand.

Juror Schubert testified that in response to Canik's question, Holloman told them that the multiple murder case was still being worked on. Aside from that, the only other thing he remembered discussed was it being wet outside and how it prevented him from being able to work in his farming and ranching business.

At the habeas hearing, Holloman testified that he was employed by the Austin County Sheriff's Department and was the investigator on the Brashear case. As such, he worked under the direction of District Attorney Koehn to gather evidence and prepare the case for trial. He discussed trial strategy with Koehn. The jurors contacted him; he did not contact the jurors. He did not report the discussion to the court because, at the time, he did not know they were jurors. No one from the D.A.'s office was present when the conversation occurred, knew about the conversation before it was raised in chambers, told him to curry favor with the jurors, or to talk with them. It was not his

intention to buddy up with the jurors when they approached him. There was no reason why he, as a witness for the State, wanted to deliberately start the trial over.

District Attorney Koehn testified that neither he nor anyone in his office talked to Holloman about talking or not talking to the jurors, nor about currying favor with them. He thought the case for the State was going very well. The chief investigator for the sheriff's department should know not to tamper with the jury.

The court denied Brashear's petition for habeas corpus.

In points of error one through five, Brashear complains the trial court erred in not granting him habeas corpus relief.

**Standard of Review**

■■■ The trial court's ruling in a habeas corpus proceeding should not be overturned absent a clear abuse of discretion. *Ex parte Ayers*, 921 S.W.2d 438, 440 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Whether discretion was so abused depends upon whether the trial court acted without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990). In determining this, we view the evidence in the light most favorable to the trial court's ruling. *Ex parte Zavala*, 900 S.W.2d 867, 870 (Tex.App.—Corpus Christi 1995, no pet.).

**Analysis**

■■ In support of his complaint, Brashear cites the case of *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App.1996). In *Bauder*, the State's first two attempts to try the defendant for driving while intoxicated ended in mistrial. *Id.* at 697. The trial court had declared the latter mistrial after finding that the prosecutor deliberately adduced evidence of an extraneous offense. *Id.* The trial court had, however, refused to dismiss the charges because Bauder had moved for the mistrial himself, and because it did not believe the

prosecutor elicited the objectionable testimony for the purpose of goading Bauder into moving for mistrial. *Id.* The court of appeals affirmed the trial court for the same reason, applying the *Oregon v. Kennedy* [1] interpretation of the Fifth Amendment to the federal constitution. *See Bauder*, 921 S.W.2d at 697. The Court of Criminal Appeals granted review of the case to address the question whether the double jeopardy provision of the Texas Constitution [2] applied the same way as its counterpart in the federal constitution did to mistrials provoked by the prosecution. *Id.* The Court of Criminal Appeals held that under the Texas Constitution:

> [A] successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request. Under this rule, the prosecutor is not accountable for mistrials when the judge need not have granted the defendant's motion. But he is accountable for mistrials properly granted by the trial judge when the events making a mistrial necessary were of his own deliberate or reckless doing.

*Id.* at 699.

*Bauder* does not help Brashear with his complaint that Holloman's conversation with the jurors was the type of reckless misconduct for which the State should bear the responsibility by foregoing a retrial of the defendant. The holding in *Bauder* was restricted to *prosecutorial* misconduct. Brashear argues that Holloman should be considered an agent of the prosecution. We find this argument unavailing. There was evidence in the record that neither the D.A., nor anyone in his office, talked to Holloman about talking to the jurors, that no one from the D.A.'s office was present when the conversation occurred, and that no one from the D.A.'s office knew about the conversation before it was raised in the judge's chambers.

---

1. 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982).

2. "The Texas Constitution provides, in article I section 14, that '[n]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.' " *Bauder*, 921 S.W.2d at 698.

This was adequate evidence from which the trial judge could have concluded that Holloman was not the agent of the prosecution.

■ Further, recently the Court of Criminal Appeals has drawn a distinction between negligence and sloppiness on the part of police and the type of reckless conduct by the State characterized in *Bauder* that would implicate the double jeopardy bar under the Texas Constitution. *See Ex parte Davis*, 957 S.W.2d 9, 13 (Tex.Crim.App.1997) ("Furthermore, the sloppiness and negligence was on the part of the police; the proper remedy for such police actions that, in effect, denied applicant due process of law is retrial."). We believe evidence in the record supports a possible conclusion by the trial court that, if anything, Holloman's conduct constituted police sloppiness, not prosecutorial misconduct as shown in *Bauder*. The following evidence supports such a conclusion: (1) Holloman did not approach the jurors; (2) the jurors approached Holloman; (3) when Holloman talked to them, he did not know they were jurors; (4) Holloman did not discuss the case at hand with them; (5) Holloman's discussion with them was confined to the weather, his favorable impression of the new sheriff, and the fact they were working on leads in the unrelated multiple murder case. We cannot say the trial court abused its discretion in denying habeas corpus relief to Brashear.

We overrule Brashear's points of error one through five.

In point of error six, Brashear asserts the trial court erred by refusing to grant a mistrial on the grounds that the prosecution had tampered with the jury.

This point of error is predicated on the premise that the prosecution tampered with the jury. We overrule this point of error because we have just held that the trial court did not abuse its discretion in rejecting that notion.

We affirm the judgment.