NUMBER 13-00-329-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


EX PARTE: ROEL CONTRERAS A/K/A DODY CONTRERAS


___________________________________________________________________


On appeal from the 36th District Court


of Aransas County, Texas.


____________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Rodriguez

Opinion by Chief Justice Seerden



 This is an appeal from the trial court's denial of Roel Contreras's
application for writ of habeas corpus. Applicant was tried for murder
in the 156th District Court of Aransas County, Texas. During the course
of that trial, the State's attorney sought to introduce the previously
undisclosed testimony of a witness regarding inculpatory statements
made by applicant, notwithstanding applicant's request for discovery
of such testimony. Applicant objected to the testimony and
subsequently moved for and was granted a mistrial. The State then re-indicted applicant for the same charge. Applicant filed a pre-trial
application for the writ of habeas corpus, contending that the second
prosecution should be jeopardy barred. The trial court denied the
application on February 7, 2000. By a single issue, appellant contests
this ruling. 

 Prior to the original trial in this matter, applicant filed a motion for
discovery, requesting the disclosure of all witnesses, and specifically
those who would testify to any statement or statements made by him. 
The State at least partially complied with the order, supplying applicant
with the names, addresses, and statements of numerous witnesses. 
Among the listed witnesses was Benita Wolfgang. However, at the
time the State complied with the discovery order, it had not obtained a
written statement from Wolfgang. Nevertheless, the State became
aware of Wolfgang's expected testimony sometime before trial. The
State asserts that it verbally informed applicant that Wolfgang would
testify to alleged statements made by applicant prior to the time the
murder was committed. The statements evidenced a motive for
applicant to harm the victim.(1)

 Applicant objected to the admission of Wolfgang's testimony on
the basis that the State had not disclosed the statements in discovery. 
After the trial court sustained applicant's objection to the testimony,
applicant moved for and received a mistrial. 

 We review a trial court's decision to grant or deny a writ of habeas
corpus under an abuse of discretion standard. State v. Patrick, 990
S.W.2d 450, 451 (Tex. App.--Corpus Christi 1999, no pet.); Ex parte
Zavala, 900 S.W.2d 867, 870 (Tex. App.--Corpus Christi 1995, no pet.). 
The evidence demonstrates a clear abuse of discretion where the record
indicates that the trial court acted without reference to any guiding
principles or rules, such that it's decision is arbitrary or unreasonable. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). In
the absence of an abuse of discretion, we will not disturb the trial
court's ruling. Brashear v. State, 985 S.W.2d 474, 476 (Tex. App.--Houston [1st Dist.] 1998, pet ref'd). 

 The issue immediately before us is whether the double jeopardy
clause of the Texas Constitution bars the subsequent prosecution of a
defendant who moves for and is granted a mistrial when the prosecutor
commits a reversible, harmful error. See Tex. Const. art. I, §14; see also
Tex. Code Crim. Proc. Ann. art. 1.10 (Vernon 1999) (statutory
codification tracking language of article 1 section 14). 

 The long-established general rule in Texas is that a mistrial
granted at the defendant's request poses no double jeopardy limitation
upon a re-trial of the defendant. See Bauder v. State, 921 S.W.2d 696,
698 (Tex. Crim. App. 1996) (Bauder I); DeYoung v. State, 160 Tex. Crim.
628, 274 S.W.2d 406 (1954). Thus, "ordinarily, when a defendant
obtains a mistrial at his own request, a second trial is not jeopardy
barred because the defendant's motion for mistrial is considered 'a
deliberate election on his part to forego his valued right to have his guilt
or innocence determined before the first trier of fact.'" Bauder, 921
S.W.2d at 698 (quoting United States v. Scott, 437 U.S. 82, 93, 98 S.Ct.
2187, 2195, 57 L.Ed.2d 65 (1978)). However, the court of criminal
appeals has recognized an exception to this general rule, holding that:

 a subsequent prosecution will be jeopardy barred after
declaration of a mistrial at the defendant's request, not only
when the objectionable conduct of the prosecutor was
intended to induce a motion for mistrial, but also when the
prosecutor was aware but consciously disregarded the risk
that an objectionable event for which he was responsible
would require a mistrial at the defendant's request.


Bauder, 921 S.W.2d at 699. The court of criminal appeals has recently
further clarified this standard, noting that two critical questions must
be answered:

 on the one hand, whether the appellant's motion for mistrial
was a choice he made in response to ordinary reversible
error in order to avoid conviction, appeal, reversal, and
retrial. Or, on the other hand, was he required to move for
mistrial because the prosecutor deliberately or recklessly
crossed "the line between legitimate adversarial
gamesmanship and manifestly improper methods" . . . that
rendered trial before a jury unfair to such a degree that no
judicial admonishment could have cured it?


See State v. Lee, 15 S.W.3d 921, 923 (Tex. Crim. App. 2000) (quoting
Ex parte Bauder, 974 S.W.2d 729, 732 (Tex. Crim. App. 1998) (Bauder
II)). This standard imports a mens rea requirement into the double
jeopardy context. When the prosecutor's conduct is either intentional
or reckless as described above, subsequent prosecutions are barred by
the double jeopardy protection. Bauder, 921 S.W.2d at 699. Thus, 

 in order for a prosecutor's offer of evidence to be viewed as
an intentional or reckless act within this context, he must
have either (1) "believe[d the evidence would] materially
improve his chances of obtaining a conviction, and the law
considers the prejudicial effect of such objectionable
evidence to be incurable even by a firm judicial
admonishment to the jury [;]" or (2) been "aware but
consciously disregarded the risk that an objectionable event
for which he was responsible would require a mistrial at the
defendant's request" or have been aware but consciously
disregarded the risk that a mistrial would be "reasonably
certain" to occur as a result of his conduct.


Lee, 15 S.W.3d at 925. 


 In the instant case, the trial court held a hearing on the application
for writ of habeas corpus. At the hearing, the State's attorney, George
Morrill, testified that Wolfgang's name had been provided to the
defense prior to the initial trial in a written witness list. He stated that
at the time the State announced ready, it had not procured a written
statement from Wolfgang. He did state, however, that he provided the
defense with oral notice of the State's intent to question Wolfgang
about the applicant's statements to her. Morrill testified that two of his
assistants could verify this oral notice. Morrill further noted that he did
not do anything to intentionally cause an end of the trial and
acknowledged that the State does not intend to present any different
evidence in any subsequent prosecution for this offense. Morrill
advised the court that Wolfgang's statement had subsequently been
reduced to writing since the mistrial was granted. 

 Defense counsel also testified and stated that they did not receive
any notice whatsoever of the State's intent to question Wolfgang about
the applicant's statements. 

 After hearing this evidence, the court denied the application.

 The evidence adduced at the hearing on the application is
conflicting. However, there was some evidence to show that the State
provided the defense with notice of its intention to question Wolfgang
about applicant's statements. In light of the State's testimony that it
provided the defense with this notice, the trial court did not abuse its
discretion in concluding that the State did not intentionally or recklessly
introduce Wolfgang's testimony in an effort to secure a mistrial. 

 Applicant asserts that the State feared an acquittal in this case
because without Wolfgang's testimony, it lacked any non-accomplice
witness testimony to corroborate the allegedly-inculpatory statements
attributed to applicant. However, at the hearing, Morrill stated that the
State had several additional witnesses it intended to call who would
corroborate those assertions. Applicant's counsel suggested that those
witnesses could not corroborate the statements attributed to applicant. 
In the face of such a conflict, the trial court is in the best position to
assess the testimony and evidence. Here, the court chose to conclude
that the State did not intentionally or recklessly seek the admission of
Wolfgang's testimony in derogation of the trial court's discovery order.

 Accordingly, we hold that the trial court did not abuse its
discretion in concluding that the State's attorney: (1) articulated a
reasonable belief that he had previously disclosed the nature of
Wolfgang's testimony to the defense, such that the admission of her
testimony would not result in incurable error; and (2) because he had
such a belief, and acknowledged an intent to introduce other
corroborating evidence, did not consciously disregard the likelihood that
the introduction of Wolfgang's testimony would result in a mistrial.
Therefore, we hold that the trial court did not abuse its discretion in
denying the application for writ of habeas corpus.

 The judgment of the trial court is AFFIRMED.

 

 

 

 ROBERT J. SEERDEN, Chief Justice


Do not publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 9th day of November, 2000.

 

1. Wolfgang is the mother of applicant's now-deceased girlfriend. 
She was to testify regarding statements applicant made evidencing a
belief that the victim of this murder was responsible for the break-up of
the relationship between applicant and Wolfgang's daughter.