Opinion issued May 14, 2009








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00461-CR

____________


VANCE EDWARD JOHNSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 1031454






MEMORANDUM OPINION

 A jury found appellant, Vance Edward Johnson, guilty of the offense of 
robbery (1) and, after finding true the allegations in two enhancement paragraphs that
he had two prior felony convictions, assessed his punishment at confinement for life. 
In three points of error, appellant contends that the trial court erred in denying his
motion to suppress evidence, admitting testimony about an extraneous offense, and
denying his motion for a mistrial after the admission of evidence of the extraneous
offense.

 We affirm.

Factual Background

 Sam Sbaiti, the complainant, testified that on June 10, 2005, he was working
as a bank teller for Compass Bank when appellant, with a black bag in hand,
approached him and said, "Put all the money on the counter, or I'm going to blow
your fucking head off." The complainant placed the money on the counter because
appellant "was concealing his hand in the bag as though he had a gun." While the
complainant was putting money on the counter, appellant kept telling him, "If you
don't hurry up, I'm going to blow your head off. I will fucking kill you." When the
complainant said, "[T]hat's all I have," appellant told him to turn around and take
four steps. After taking four steps, the complainant looked back and saw that
appellant was gone.

 Federal Bureau of Investigation ("FBI") Special Agent R. Sharp testified that
on June 20, 2005, ten days after the Compass Bank robbery, a man robbed a nearby
Sterling Bank. After obtaining a description of the man who had robbed the Sterling
Bank, Sharp "started patrolling the area looking" for any sign of the robber. As he
was driving on the road that runs behind the Sterling Bank, Sharp noticed appellant
walking towards the University of Houston. Because appellant matched the general
description of the man who had robbed the Sterling Bank, Sharp pulled up next to
him and, after identifying himself as a special agent with the FBI, asked appellant for
his identifying information, i.e., "date of birth, social [security number], address,
employment, [and other] general things that [Sharp typically] would ask somebody
in an interview." After appellant explained that he was a student at the University of
Houston and provided the requested identifying information, Sharp "[w]ent back to
the office and began preparing [his] paperwork." However, when Sharp began
checking the information that appellant had given him, he discovered that although
appellant's name was accurate, other information was false. 

 When Sharp discovered that appellant had provided him with inaccurate
information, he began to suspect that appellant may have been involved in the
Compass Bank robbery. Sharp showed the complainant a photographic array
containing a photograph of appellant and five other men, and the complainant
identified appellant as the man who had robbed him at the Compass Bank on June 10,
2005. Based on that identification, a police officer obtained an arrest warrant for
appellant, and Sharp drove to appellant's residence, accompanied by FBI Special
Agent Cheatam, to arrest appellant. When they arrived at appellant's residence,
Sharp saw appellant exit the house, so he called appellant's name. Appellant pointed
over Sharp's shoulder and said that the man that Sharp was looking for was over
there. Then appellant ran and attempted to scale a fence, but before appellant could
climb over the fence, "Cheatam was able to grab him." Sharp and Cheatam then
"turned [appellant] over to the custody of the Houston Police Department."

 Houston Police Department Sergeant D. Ryza testified that he investigated
appellant's involvement in the robbery of Compass Bank. On June 22, 2005, after
appellant "had been placed under arrest by FBI agents," Ryza went to appellant's
house, and Kathy Alvarez, who said she had been staying at the house with appellant
"on and off" for approximately three weeks, gave Ryza consent to search the home. 
Ryza and four other police officers searched the house and found approximately
$3,000 in cash hidden throughout the house. 

Motion to Suppress

 In his third point of error, appellant argues that the trial court erred in denying
his motion to suppress evidence of the money seized at his house because the State
did not demonstrate that the warrantless search of his house was justified.

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the trial court's application of the law. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). We afford "the same
amount of deference to [a] trial court's rulings on 'application of law to fact
questions' . . . if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor." Montanez v. State, 195 S.W.3d 101, 106 (Tex. Crim. App.
2006) (quoting Guzman v. State, 955 S.W.2d 85, 89 (1997)). At a suppression
hearing, the trial court is the sole and exclusive trier of fact and judge of a witness's
credibility. Maxwell, 73 S.W.3d at 281. Accordingly, the trial court may choose to
believe or to disbelieve all or any part of the witnesses' testimony. State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000). Unless the trial court abuses its discretion
by making a finding unsupported by the record, we defer to its fact findings and will
not disturb them on appeal. Flores v. State, 177 S.W.3d 8, 13-14 (Tex.
App.--Houston [1st Dist.] 2005, pet. ref'd). In reviewing a trial court's ruling, we
generally consider only evidence adduced at the suppression hearing because the
ruling was based on it rather than evidence introduced later. Rachal v. State, 917
S.W.2d 799, 809 (Tex. Crim. App. 1996). 

 At the pretrial hearing on appellant's motion, Officer Ryza testified that when
he arrived at appellant's house, appellant had already been arrested. When Ryza
knocked on the front door of the house, Alvarez arrived at the door and, indicating
that she "had custody of the house at that time," agreed to let Ryza and the other
police officers search the house. After obtaining Alvarez's written consent, Ryza and
four other officers searched appellant's house. Appellant testified that Alvarez did
not have "permission to control who came into and out of the house when [he] left"
and that she was staying at his house only "for that one day."

 After hearing the evidence at the pretrial hearing, the trial court found that
Alvarez "was staying at the house, that she was in control of the house, and that she
legally could give consent to search the house."

 Warrantless searches are presumed to be unreasonable, but there are well-recognized exceptions. Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). 
A third party may consent to a search when she has "equal control over and authority
to use the premises being searched." Maxwell, 73 S.W.3d at 281. Mutual use of the
property by a third party gives rise to common authority over the premises such that
the third party may consent to a warrantless search. Id. at 281-82. Here, the trial
court's findings that Alvarez "was staying at the house" and "was in control of the
house" are supported by Sergeant Ryza's testimony. Based on this mutual use of
appellant's residence, Alvarez had the authority to consent to the warrantless search
of appellant's house. See id. Accordingly, we hold that the trial court did not err in
denying appellant's motion to suppress evidence.

 We overrule appellant's third point of error.

Testimony About the Sterling Bank Robbery

 In his first point of error, appellant argues that "the trial court erred in
admitting, over defense objection, evidence of an extraneous offense, the robbery of
Sterling Bank on June 20, 2005, . . . during the State's case-in-chief" because this
evidence "was not relevant and its probative value was substantially outweighed by
unfair prejudice and confusion of the issues." 

 Relevant evidence "may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice." Tex. R. Evid. 403. The opponent of
the evidence must not only demonstrate the negative attributes of the evidence but
must also show that these negative attributes "substantially outweigh" any probative
value. Montgomery v. State, 810 S.W.2d 372, 377 (Tex. Crim. App. 1991) (op. on
reh'g). 

 Here, after the complainant testified about the Compass Bank robbery, the trial
court ruled that the State could elicit testimony about the Sterling Bank robbery,
which occurred ten days after the Compass Bank robbery, because appellant had
made his "identity an issue."

 The only witness who referenced the Sterling Bank robbery was Special Agent
Sharp, who testified that:

 [Sharp:] During the [Sterling] bank robbery, the victim teller gave
the bank robbery suspect a dye pack, which is exploding
red ink that gets on the money. And after we had finished
our interviews inside the bank, we started patrolling the
area looking to see if they had thrown the dye pack out,
which commonly happens. They want to get rid of it.

Sharp then began patrolling the area, looking for the dye pack or for anyone who
matched the physical description of the man who had robbed the Sterling Bank. 
Sharp spoke to appellant because he was in the area and matched the physical
description of the bank robber. After obtaining appellant's name and other
identifying information, Sharp did not believe that appellant had been involved in
robbing the Sterling Bank. However, Sharp began to suspect that "maybe [appellant]
was a suspect in the Compass Bank robbery on June 10, 2005" when he discovered
that appellant had provided him with incorrect identifying information.

 Appellant did not object, during Sharp's testimony, to Sharp's brief reference
to the Sterling Bank robbery. However, after the State had rested its case, appellant
complained that Sharp's testimony about the Sterling robbery was "highly
prejudicial." In response to appellant's complaint, the trial court stated that it would
"consider an instruction to disregard." After appellant rested, the trial court
instructed the jury as follows:

 [The trial court:] At this time, members of the jury, I'm going to
instruct you to disregard any evidence about any
robbery or alleged robbery other than the alleged
robbery on or about June 10, 2005, of [the
complainant]. 

 Generally, a timely instruction to disregard cures an error associated with an
improper question and answer, even one regarding extraneous offenses. Ovalle v.
State, 13 S.W.3d 774, 783-84 (Tex. Crim. App. 2000); see Kemp v. State, 846 S.W.2d
289, 308 (Tex. Crim. App. 1992) (concluding that testimony referring to inadmissible
extraneous offense was rendered harmless by instruction to disregard because
testimony "was not so inflammatory as to undermine the efficacy of the trial court's
instruction to disregard"). Moreover, we presume that a jury will obey a trial court's
instruction to disregard unless "the evidence is clearly calculated to inflame the minds
of the jury and is of such a character as to suggest the impossibility of withdrawing
the impression produced on their minds." Ladd v. State, 3 S.W.3d 547, 567 (Tex.
Crim. App. 1999) (quoting Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App.
1987), cert. denied, 484 U.S. 905, 108 S. Ct. 248 (1987)); see Baker v. State, 177
S.W.3d 113, 126 (Tex. App.--Houston [1st Dist.] 2005, no pet.) (citing Gardner, 730
S.W.2d at 696). Only an extremely inflammatory statement overcomes this
presumption. See Long v. State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)
(holding that instruction to disregard cured prejudice created by prosecutor's
argument that compared defendant to Adolf Hitler); Logan v. State, 698 S.W.2d 680,
683-84 (Tex. Crim. App. 1985) (holding that instruction to disregard cured prejudice
created by prosecutor's reference to homosexual relationship between defendant and
her alibi witness). 

 Here, the only testimony about the Sterling Bank robbery came from Special
Agent Sharp, who testified that he talked to appellant because appellant appeared to
match the physical description of the man who had robbed the Sterling Bank. Sharp
never stated that appellant robbed the Sterling Bank. In fact, he testified that he did
not believe that appellant had been involved in the Sterling Bank robbery. Sharp's
testimony explained how appellant became a suspect in the Compass Bank robbery. 
Appellant does not explain in his briefing, nor do we find evidence in the record, that
Sharp's fleeting reference to the Sterling Bank robbery was so inflammatory that it
could not have been cured by the trial court's instruction. Accordingly, we hold that
any possible error in admitting the testimony about the Sterling Bank robbery was
cured by the trial court's instruction to disregard. See Ovalle, 13 S.W.3d at 783-84. We overrule appellant's first point of error.


Motion for Mistrial

 In his second point of error, appellant argues that the trial court abused its
discretion in denying his motion for mistrial after the trial court had determined that
the extraneous offense evidence was inadmissible because the evidence had "a
substantial and injurious effect or influence" on the jury.

 A mistrial is an extreme remedy for prejudicial events that occur at trial, and
it should be exceedingly uncommon. Bauder v. State, 921 S.W.2d 696, 698 (Tex.
Crim. App. 1996), overruled on other grounds by Ex parte Lewis, 219 S.W.3d 335,
337 (Tex. Crim. App. 2007). A mistrial is required only when the impropriety is
clearly calculated to inflame the minds of the jurors and is of such a character as to
suggest the impossibility of withdrawing the impression produced on the minds of the
jurors. Hinojosa v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). Even when a
prosecutor intentionally elicits testimony or produces other evidence before the jury
that should have been excluded, the trial should continue if possible. Bauder, 921
S.W.2d at 698. A trial court may cure an error associated with an improper question
and answer, even one regarding extraneous offenses, with a timely instruction to
disregard. See Ovalle, 13 S.W.3d at 783-84.

 Here, after the State rested, appellant moved for a mistrial based on the "highly
prejudicial" effect of Sharp's testimony about the Sterling Bank robbery. The trial
court denied appellant's motion for mistrial, and instructed the jury to disregard any
evidence about the Sterling Bank robbery. Having held that any error in admitting
the testimony about the Sterling Bank robbery was cured by the trial court's
instruction to disregard, we further hold that the trial court did not err in denying
appellant's motion for mistrial.

 We overrule appellant's second point of error.

Conclusion

 We affirm the judgment of the trial court.

 

 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code. Ann. § 29.02 (Vernon 2003).