NUMBER 13-09-302-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CARLOS OMAR NIETO, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 430th District Court 

of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Vela



 Appellant, Carlos Omar Nieto, was indicted for two counts of sexual assault of a
child (counts one and two), see Tex. Penal Code Ann. § 22.011(a)(2)(A) (Vernon Supp.
2009), and one count of indecency with a child by contact. See id. § 21.11(a)(1). The jury
acquitted appellant of counts one and two, but convicted him of count three. Following a
punishment hearing, the jury assessed punishment at fourteen years' imprisonment. In
three issues, appellant complains: (1) the evidence is insufficient to support his conviction;
(2) the trial court erred in failing to grant a mistrial; and (3) he received ineffective
assistance of counsel. We affirm.

I. Factual Background

A. State's Evidence

 Thirteen-year-old P.W. and her friend, fourteen-year-old A.V., spent time together
at the RGV Ice Skating Center in McAllen. There, they met appellant, who was thirty-six
years old, and Kevin Tienter, who was seventeen years old. On April 12, 2008, A.V. was
spending the night with P.W., who lived with her parents in McAllen. That night, Tienter
and appellant came to P.W.'s house. Because P.W.'s parents were home, P.W. and A.V.
"snuck them in" through the garage window. P.W. testified that while she, A.V., appellant,
and Tienter were in her bedroom, she heard appellant tell A.V. to "just relax"and that A.V.
said, "'No, I don't know. . . .'" P.W. testified that "I saw him [appellant] that--like he started
pulling down her [A.V.'s] shorts--under--like a blanket." Next, she saw that appellant "got
the blanket and he put it over her, like under her waist." A.V. testified that while she and
the others were in P.W.'s bedroom, P.W. and Tienter "started making out and like having
sex, and stuff." At that point, appellant asked A.V., "'Can I eat you out?'" A.V. knew what
he wanted, but she was "scared and panicky." She testified that "I just went along with it
because [P.W.] wanted to be with Kevin, and I didn't want to get her mad, . . ." A.V. stated
that appellant took off her shorts,"and he started doing oral sex, with his tongue and his
finger." At that point, the prosecutor asked A.V., "When you say 'oral sex,' with his tongue,
he used his tongue how?" She said, "He licked me down there." In response, the
prosecutor asked her, "When you say 'down there,' are you referring to your private
parts?", she said, "Yes, ma'am." When the prosecutor asked her, "Did his tongue go inside
your private part?", she said, "Yes, ma'am." She also testified that appellant put his
"fingers" inside her "private part." When appellant stopped, A.V. got dressed and stayed
away from him. A.V. testified that she was never appellant's spouse, and "he knew that
I was 14." A.V. testified that after the incident, "[H]e [appellant] had told us to lie, and say
it was a different Charlie." (1) Specifically, appellant told her and P.W. "to say that it was a
Charlie about 5"10', a Mexican with a tattoo on his neck." A.V. testified that she and P.W.
"just felt like it was wrong, and that we couldn't lie to our parents, . . . So we just told them
the truth after the incident happened. . ."

 Kevin Tienter testified that on the evening in question, he planned to visit P.W. at
her house "[t]o have sex." That night, appellant gave Tienter a ride to P.W.'s house, and
when they arrived, P.W. let both of them in through the garage window. They went to
P.W.'s bedroom, where Tienter and P.W. "just started having sex." Tienter stated that
while he and P.W. were in bed together, A.V. and appellant were on the floor, whispering. 
Tienter testified that he and appellant stayed in P.W.'s bedroom with P.W. and A.V. for
about one and one-half hours, but he did not know if appellant and A.V. had sex. 

 Yulissa Salazar, a McAllen police officer, testified that on May 9, 2008, she obtained
statements from A.V. and P.W. After obtaining these statements, Officer Salazar was able
to discern that appellant, who was thirty-six years old, had sexually assaulted A.V. on April
12, 2008 and that A.V. was fourteen years old at that time.

B. Defense Evidence

 Officer Yulissa Salazar testified that she did not know if A.V. went to see a sexual
assault nurse examiner. Officer Salazar's report of the incident did not indicate that a
"sexual examination kit" was completed on A.V. Officer Salazar did not make a diagram
of the crime scene and did not take any photos of the inside or outside of the home where
P.W. lived.

 P.W.'s mother, M.W. (2) testified that on the night in question, she went to sleep
around 10:00 p.m. At some point, she woke up because of "a noise that somebody
opened the door" of her daughter's room. She saw that her daughter's door was open and
saw "two shadows pass by." M.W. went into the kitchen and saw P.W. and A.V. standing
in the kitchen doorway. They told M.W. that they had heard a noise in the garage.

 P.W. testified that she and A.V. led appellant and Tienter from the garage into her
bedroom. After P.W. secured her bedroom, she and Tienter got on her bed. P.W. testified
that the only light in her room came in through her bedroom window. However, she could
tell that appellant was on her bedroom floor with A.V. P.W. stated that she and A.V. let
appellant and Tienter out of the house through the garage. When M.W. confronted them
about what had happened, P.W. testified that she lied to her mother and told her that she
and A.V. had heard a noise outside the garage.

 Kevin Tienter testified that on the night in question, he was at appellant's house. 
At that time, P.W. and Tienter sent "several texts" to each other, and P.W. invited him to
her house. Tienter testified that the purpose of the invitation was for him to have sex with
P.W. Appellant drove him to P.W.'s house. Tienter testified that there was no light coming
through the window of P.W.'s bedroom. He could hear appellant and A.V., but he could
not see them. When defense counsel asked Tienter, "Did you hear any noise of the mouth
that would indicate that somebody was providing oral sex to another person?", he said,
"No, sir." He stated that when he and P.W. were having sexual relations on P.W.'s bed,
her "focus" was on him, not on appellant and A.V.

II. DISCUSSION

A. Sufficiency of the Evidence

 In issue one, appellant challenges the legal and factual sufficiency of the evidence
to support his conviction.

 1. Standards of Review

 When conducting a legal sufficiency review, a court must ask whether "any rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt'--not whether 'it believes that the evidence at trial established guilt beyond a
reasonable doubt.'" Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting
Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "In doing so, we
assess all of the evidence 'in the light most favorable to the prosecution.'" Id. (quoting
Jackson, 443 U.S. at 319). "After giving proper deference to the fact finder's role, we will
uphold the verdict unless a rational fact finder must have had reasonable doubt as to any
essential element." Id. at 518.

 In a factual-sufficiency review, the only question to be answered is: "Considering
all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a
reasonable doubt?" Grotti v. State, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). 
Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting
the conviction is 'too weak' to support the fact finder's verdict;" or (2) "considering
conflicting evidence, the fact finder's verdict is 'against the great weight and preponderance
of the evidence.'" Laster, 275 S.W.3d at 518 (quoting Watson v. State, 204 S.W.3d 404,
414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency
review, it must defer to the jury's findings. Id. The court of criminal appeals has "set out
three 'basic ground rules' implementing this standard." Id. (quoting Watson, 204 S.W.3d
at 414). First, the appellate court must consider all of the evidence in a neutral light, as
opposed to in a light most favorable to the verdict. Id. Second, the appellate court "may
only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" 
Id. (quoting Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the
appellate court must explain why the evidence is too weak to support the verdict or why the
conflicting evidence greatly weighs against the verdict. Id. Although the verdict is afforded
less deference during a factual-sufficiency review, an appellate court is not free to "override
the verdict simply because it disagrees with it." Id.

 Our review of a legal and a factual sufficiency challenge should be examined under
the principles of review for a hypothetically correct jury charge. Grotti, 273 S.W.3d at 280
"'Such a charge [is] one that accurately sets out the law, is authorized by the indictment,
does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the
State's theories of liability, and adequately describes the particular offense for which the
defendant was tried.'" Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009)
(quoting Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

 2. Applicable Law

 Section 21.11 of the penal code provides that a person commits the offense of
indecency with a child by contact "if, with a child younger than 17 years and not the
person's spouse, . . . the person: (1) engages in sexual contact with the child or causes
the child to engage in sexual contact; . . ." Tex. Penal Code Ann. § 21.11(a)(1). Sexual
contact includes the following acts:

 if committed with the intent to arouse or gratify the sexual desire of any
person:" "(1) any touching by a person, including touching through clothing,
of the anus, breast, or any part of the genitals of a child; or (2) any touching
of any part of the body of a child, including touching through clothing, with
the anus, breast, or any part of the genitals of a person. 


 Id. § 21.11(c).


 A fact finder can infer the requisite, specific intent to arouse or gratify the sexual
desire of any person "from the defendant's conduct, remarks, and all surrounding
circumstances." Breckenridge v. State, 40 S.W.3d 118, 128 (Tex. App.-San Antonio 2000,
pet. ref'd) (citing McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)). The
testimony of a child victim alone is sufficient to support a conviction for indecency with a
child. Perez v. State, 113 S.W.3d 819, 838 (Tex. App.-Austin 2003, pet. ref'd), see Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); Tear v. State, 74 S.W.3d 555, 560 (Tex.
App.-Dallas 2002, pet. ref'd).

 3. Analysis

 To prove the offense of indecency with a child by contact as set forth in the jury
charge, the State was required to establish beyond a reasonable doubt that appellant "did
then and there engage in sexual contact with [A.V.], a child younger than 17 years of age
and not his spouse, by then and there touching the genitals of [A.V.], with intent to arouse
and gratify the sexual desire of the [appellant], . . . ." In this case, a rational jury could have
determined the following from the evidence: (1) appellant and A.V. were together on the
floor of P.W.'s darkened bedroom; (2) at this time, appellant told A.V. to "just relax" and
asked her, "'Can I eat you out?'"; (3) appellant took off her shorts, "and he started doing
oral sex, with his tongue and his finger"; (4) appellant put his tongue and his fingers in her
private part; (5) A.V. was fourteen years old at the time, and appellant was thirty-six years
old; (6) A.V. was never married to appellant; and (7) after the incident, appellant told A.V.
to lie about the perpetrator's identity.

 The controverting evidence showed that: (1) P.W.'s bedroom was too dark for P.W.
to see what appellant and A.V. were doing; (2) while appellant and A.V. were on the floor
in P.W.'s bedroom, P.W. and Tienter were on the bed, engaging in sexual relations; (3) no
one saw appellant perform oral sex on A.V.; (4) Tienter did not hear any noise that
suggested appellant was performing oral sex on A.V.; (5) after the incident, A.V. did not
undergo a sexual-assault examination; (6) when appellant and Tienter left the house, A.V.
and P.W. did not tell P.W.'s mother that the two men had been in P.W.'s bedroom; (7)
P.W. lied to her mother and a police investigator about what had happened to her; and (8)
A.V. initially did not tell her parents the truth about what appellant did to her in P.W.'s
bedroom.

 First, we note that the jury is the sole judge of the credibility of the witnesses and
the weight to be given the evidence, and may choose to believe all, some, or none of it. 
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000); Rachal v. State, 917S.W.2d 799, 805 (Tex. Crim. App. 1996). 
Thus, the jury is permitted to believe or disbelieve any part of the testimony of any witness. 
Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998); Perez, 113 S.W.3d at 838. 
"Reconciliation of evidentiary conflicts is solely a function of the trier of fact." Perez, 113
S.W.3d at 838 (citing Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)). The
jury could have accepted that portion of A.V.'s testimony sufficient to support the
convictions and disregarded the inconsistencies. "A decision is not manifestly unjust
because the jury resolved the manifestly conflicting views of the evidence in favor of the
State." Cain, 958 S.W.2d at 409.


 Viewing the evidence in the light most favorable to the verdict, we conclude the
evidence is legally sufficient for a rational jury to find appellant guilty beyond a reasonable
doubt of indecency with a child by contact. Viewing all of the evidence neutrally, we
conclude that the evidence supporting the conviction is not so weak that the jury's
determination is clearly wrong and manifestly unjust, or that the verdict is against the great
weight and preponderance of the evidence. We, therefore, hold that the evidence is legally
and factually sufficient to support the conviction. Issue one is overruled.

B. Denial of Mistrial

 In issue two, appellant contends the trial court erred by failing to grant a mistrial after
the prosecutor made comments about extraneous offenses and bad acts.

 1. Background

 During the State's case-in-chief, Officer Salazar testified that during her investigation
of this case, she obtained written statements from A.V. and P.W. After Officer Salazar said
this, the prosecutor asked her, "[O]nce you were able to obtain the statements, what were
you able to discern?" To this, she said, "That possibly several criminal offenses had
occurred." The trial court sustained defense counsel's timely objection (3) to Officer Salazar's
answer, and after defense counsel requested an instruction to disregard, the trial court
responded as follows: "The jury will disregard the last comment on [sic] the witness." The
trial court denied defense counsel's motion for a mistrial.

 On another occasion when P.W. was testifying on direct-examination, the
prosecutor asked her if she knew where appellant lived. P.W. said that he lived
"somewhere here in Edinburg, around the university or college, . . ." When the prosecutor
asked her, "How did you learn that?", she said, "He told me that on My Space, when he
invited us. He was inviting us to go to his apartment that Kevin was going to be there, too,
and some other friends, and there was going to be alcohol and drugs there and the weed
was free." The trial court sustained defense counsel's timely objection (4) to P.W.'s answer,
and after defense counsel requested an instruction to disregard, the trial court responded
as follows: "The jury will disregard the last comment the witness made of what was there-
or what was going to be there at the apartment." The trial court denied defense counsel's
motion for a mistrial. After the jury returned from its lunch break, the trial court instructed
the jury as follows:

 There was testimony earlier this morning, or late morning, that it was [P.W.]
testified about some issue of alcohol or drugs. I'm going to instruct you,
again, to disregard that completely, and not consider it for any purpose
whatsoever. Mr. Nieto is here charged with a sexual assault of a child, count
one and two, and an indecency with a child count three, and that's the only
thing that he's going to be tried on. So do not consider it for any purpose. 
All right?


 2. Analysis

 We apply an abuse-of-discretion standard when reviewing the denial of a motion
for mistrial. Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); Cordova v.
State, 296 S.W.3d 302, 311 (Tex. App.-Amarillo 2009, pet. ref'd). A trial court does not
abuse its discretion when its decision falls within the zone of reasonable disagreement. 
Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); Cordova, 296 S.W.3d at 312.

 "[M]istrials are an extreme remedy for prejudicial events occurring during the trial
process." Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). "Even when a
prosecutor intentionally elicits testimony or produces other evidence before the jury which
is excludable at the defendant's option, our law prefers that the trial continue." Id. "The
adversary system thus depends upon a belief that the declaration of a mistrial ought to be
an exceedingly uncommon remedy for the residual prejudice remaining after objections are
sustained and curative instructions given." Id. "For this reason, our system presumes that
judicial admonishments to the jury are efficacious." Id. (citing Waldo v. State, 746 S.W.2d
750, 754 (Tex. Crim. App. 1988)). "On appeal, we generally presume the jury follows the
trial court's instructions in the manner presented." Thrift v. State, 176 S.W.3d 221, 224
(Tex. Crim. App. 2005). "The presumption is refutable, but the appellant must rebut the
presumption by pointing to evidence that the jury failed to follow the trial court's
instructions." Id. Thus, testimony referring to extraneous offenses can be rendered
harmless by an instruction to disregard such testimony, unless it is so clearly calculated
to inflame the minds of the jury and is of such a nature that it suggests the impossibility of
withdrawing the impression produced. Cordova, 296 S.W.3d at 312 (citing Lusk v. State,
82 S.W.3d 57, 60 (Tex. App.-Amarillo 2002, pet. ref'd) (citing Kemp v. State, 846 S.W.2d
289, 308 (Tex. Crim. App. 1992))). "Only when it is apparent that an objectionable event
at trial is so emotionally inflammatory that curative instructions are not likely to prevent the
jury being unfairly prejudiced against the defendant may a motion for mistrial be granted." 
Bauder, 921 S.W.2d at 698 (citing Kemp, 846 S.W.2d at 308).

 Here, it is not apparent that the testimony from Officer Salazar and P.W. regarding
the extraneous offenses was so emotionally inflammatory that the trial court's curative
instructions were not likely to prevent the jury from being unfairly prejudiced against
appellant. These complained-of statements are similar in nature to those which courts
have found curable by instructions to disregard. See, e.g., Ovalle v. State, 13 S.W.3d 774,
783 (Tex. Crim. App. 2000) (holding that a prompt instruction to disregard will usually cure
error associated with an improper question and answer, even one regarding extraneous
offenses); Tennard v. State, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990) (finding that a
limiting instruction given after a witness referred to the defendant's prior prison time cured
any error); Barney v. State, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985) (determining that
an instruction to disregard a reference to the defendant's status as an "ex-con" sufficiently
cured any error); Coe v. State, 683 S.W.2d 431, 435-36 (Tex. Crim. App. 1984) (holding
instruction to disregard cured error resulting from witness's reference to "other robberies,"
suggesting the defendant had committed them); Lachapelle v. State, 579 S.W.2d 1, 1-2
(Tex. Crim. App. 1979) (explaining that a prompt instruction to disregard cured any error
arising out of witness's reference to another case that suggested that the defendant had
committed another crime). Moreover, appellant has failed to rebut the presumption that
the jury followed the trial court's instructions. In light of the trial court's instructions and
appellant's failure to rebut the presumption that the jury followed the instructions, we
presume the jury did not consider the statements in their determination of appellant's guilt. 
We conclude that the trial court did not abuse its discretion in denying the motions for
mistrial.

 By this same issue, appellant contends the trial court erred by admitting hearsay
testimony into evidence. Specifically, he complains the inadmissible hearsay evidence
"involve[d] facts regarding [his] resignation" from his place of employment, the RGV Ice
Skating Center. On redirect-examination, Officer Salazar testified that during her
investigation of this case, she went to the RGV Ice Skating Center in order to speak to
appellant. When the prosecutor asked Officer Salazar, "Without telling us what other
people told you, I'm asking you, why exactly were you not able to speak with Mr. Nieto
[appellant] that day?", she said, "Because he had resigned." Defense counsel did not
object to the answer. Next, the prosecutor asked her, "Were you able to gather from your
information what date he resigned on?" To this question, defense counsel lodged the
following objection: "I'm going to object, Your Honor. Same information. Any information
that she had that was acquired from a third-party. The State, in essence, is back-dooring
here, Judge." The trial court overruled the objection, and Officer Salazar testified that
appellant resigned from the RGV Ice Skating Center on May 9, 2008.

 Here, appellant has not cited any authority showing that the information which the
State elicited from Officer Salazar constituted inadmissible hearsay. Furthermore, he has
cited no authority showing that the complained-of testimony constituted either harmful error
or reversible error. Because appellant has inadequately briefed the argument relating to
the hearsay issue, the issue is not preserved for our review. See Tex. R. App. P. 38.1(i);
Garza v. State, 290 S.W.3d 489, 490-91 (Tex. App.-Corpus Christi 2009, pet. ref'd). Issue
two is overruled.

C. Ineffective Assistance of Counsel

 In issue three, appellant contends his trial counsel was ineffective because he
allowed the State, on direct-examination, to ask numerous leading questions of a witness.

 1. Standard of Review

 Strickland v. Washington defines the components required to show ineffective
assistance of counsel. 466 U.S. 668, 687 (1984). The two required components are a
performance component and a prejudice component. Id. First, the defendant must show
that counsel's performance was deficient, which requires a showing that counsel made
errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth
Amendment. Perez v. State, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy
this prong of the analysis, the defendant "must show that counsel's representation fell
below an objective standard of reasonableness" based upon "prevailing professional
norms." Strickland, 466 U.S. at 688. For this performance inquiry, we consider all the
circumstances with "a strong presumption that counsel's conduct [fell] within the wide
range of reasonable professional assistance." Id. at 688-89.

 Second, the defendant must show that counsel's deficient performance prejudiced
the defense. Perez, 310 S.W.3d at 893. This requires the defendant to show that
counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose
result is reliable." Id. (citing Strickland, 466 U.S. at 687). To satisfy this element, the
"'defendant must show that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting
Strickland, 466 U.S. at 694). The defendant has the burden of proving ineffectiveness by
a preponderance of the evidence. Id. (citing Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005)).

2. Analysis

 During the State's redirect-examination of Tienter during the guilt-innocence

phase, appellant calls our attention to several instances where the prosecutor asked
leading questions:

 Prosecutor: Now, Kevin, isn't it true that this was the first time that you
were going to have sex?

 

 Mr. Tienter: Yes, it is.

 

 * * * 

 

 Prosecutor: It's pretty fair to say that you were not focused on anything else
that was going on in that room [P.W.'s bedroom], correct?

 

 Mr. Tienter: That's correct.

 

 Prosecutor: And so it is pretty fair to say that you had no idea, and you
cannot tell this jury, whether or not Nieto [appellant[ and [A.V.]
had sex or not. Is that correct?

 

 Mr. Tienter: That is correct.

 

 * * *

 

 Prosecutor: And isn't it a fact that Carlos Nieto [appellant] gave you the
condoms, right then and there?

 

 Mr. Tienter: Yes. In that room.

 

 * * *

 

 Prosecutor: You mentioned earlier there were lights in the street when they
[P.W. and A.V.] opened the garage door. Correct?

 

 Mr. Tienter: Yes.

 

 * * *

 

 Prosecutor: Well, at night, if there are street lights, there is at least some
moonlight coming in, is that correct?

 

 Mr. Tienter: There has got to be, . . .

 

 * * *

 

 Prosecutor: Okay. You testified earlier you met "Charlie" [appellant] in
2007-2006?

 

 Mr. Tienter: I've known him for two years.

 

 * * *

 

 Prosecutor: Isn't it a fact that you would want to try to help your "buddy"
out, isn't that correct?

 

 Mr. Tienter: In this case now?

 

 Prosecutor: Yes.


 Mr. Tienter: I'm not. 

 

 Prosecutor: So the entire rest of the time that you were sitting there after
you had sex, you just sat there, and were completely quiet, is
that right?

 

 Mr. Tienter: I understand the question, but I just don't remember after we
were done. I just remember the door hitting. 


 Defense counsel did not object to any of these questions. However, even if defense
counsel's failure to object constituted deficient performance, appellant has failed to show
that there is a reasonable probability that, but for counsel's unprofessional errors, the result
of the proceeding would have been different. See Strickland, 466 U.S. at 694. 
Furthermore, if counsel's reasons for his conduct do not appear in the record and there is
"at least the possibility" that the conduct could have been grounded in legitimate trial
strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance
claim on direct appeal. Garza v. State, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). 
Issue three is overruled.

III. CONCLUSION

 We affirm the trial court's judgment.

 

 

 ROSE VELA 

 Justice


 

Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed the

27th day of August, 2010.
1. A.V. and P.W. knew appellant as "Charlie."
2. To protect the privacy of P.W. and her mother, we refer to her by her initials.
3. The entirety of defense counsel's objection was, "Objection, under 404(b), Your Honor."
4. The entirety of defense counsel's objection was, "We object under 404."