

**NUMBER 13-09-302-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**CARLOS OMAR NIETO,**                                             **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                            **Appellee.**

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Vela

Appellant, Carlos Omar Nieto, was indicted for two counts of sexual assault of a child (counts one and two), *see* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (Vernon Supp. 2009), and one count of indecency with a child by contact. *See id*. § 21.11(a)(1). The jury acquitted appellant of counts one and two, but convicted him of count three. Following a punishment hearing, the jury assessed punishment at fourteen years' imprisonment. In

three issues, appellant complains: (1) the evidence is insufficient to support his conviction; (2) the trial court erred in failing to grant a mistrial; and (3) he received ineffective assistance of counsel. We affirm.

## I. Factual Background

### A. State's Evidence

Thirteen-year-old P.W. and her friend, fourteen-year-old A.V., spent time together at the RGV Ice Skating Center in McAllen. There, they met appellant, who was thirty-six years old, and Kevin Tienter, who was seventeen years old. On April 12, 2008, A.V. was spending the night with P.W., who lived with her parents in McAllen. That night, Tienter and appellant came to P.W.'s house. Because P.W.'s parents were home, P.W. and A.V. "snuck them in" through the garage window. P.W. testified that while she, A.V., appellant, and Tienter were in her bedroom, she heard appellant tell A.V. to "just relax"and that A.V. said, "'No, I don't know. . . .'" P.W. testified that "I saw him [appellant] that—like he started pulling down her [A.V.'s] shorts—under—like a blanket." Next, she saw that appellant "got the blanket and he put it over her, like under her waist." A.V. testified that while she and the others were in P.W.'s bedroom, P.W. and Tienter "started making out and like having sex, and stuff." At that point, appellant asked A.V., "'Can I eat you out?'" A.V. knew what he wanted, but she was "scared and panicky." She testified that "I just went along with it because [P.W.] wanted to be with Kevin, and I didn't want to get her mad, . . ." A.V. stated that appellant took off her shorts,"and he started doing oral sex, with his tongue and his finger." At that point, the prosecutor asked A.V., "When you say 'oral sex,' with his tongue, he used his tongue how?" She said, "He licked me down there." In response, the prosecutor asked her, "When you say 'down there,' are you referring to your private parts?", she said, "Yes, ma'am." When the prosecutor asked her, "Did his tongue go inside

2

your private part?", she said, "Yes, ma'am." She also testified that appellant put his "fingers" inside her "private part." When appellant stopped, A.V. got dressed and stayed away from him. A.V. testified that she was never appellant's spouse, and "he knew that I was 14." A.V. testified that after the incident, "[H]e [appellant] had told us to lie, and say it was a different Charlie."[1] Specifically, appellant told her and P.W. "to say that it was a Charlie about 5"10', a Mexican with a tattoo on his neck." A.V. testified that she and P.W. "just felt like it was wrong, and that we couldn't lie to our parents, . . . So we just told them the truth after the incident happened. . ."

Kevin Tienter testified that on the evening in question, he planned to visit P.W. at her house "[t]o have sex." That night, appellant gave Tienter a ride to P.W.'s house, and when they arrived, P.W. let both of them in through the garage window. They went to P.W.'s bedroom, where Tienter and P.W. "just started having sex." Tienter stated that while he and P.W. were in bed together, A.V. and appellant were on the floor, whispering. Tienter testified that he and appellant stayed in P.W.'s bedroom with P.W. and A.V. for about one and one-half hours, but he did not know if appellant and A.V. had sex.

Yulissa Salazar, a McAllen police officer, testified that on May 9, 2008, she obtained statements from A.V. and P.W. After obtaining these statements, Officer Salazar was able to discern that appellant, who was thirty-six years old, had sexually assaulted A.V. on April 12, 2008 and that A.V. was fourteen years old at that time.

## B. Defense Evidence

Officer Yulissa Salazar testified that she did not know if A.V. went to see a sexual assault nurse examiner. Officer Salazar's report of the incident did not indicate that a

---

[1]A.V. and P.W. knew appellant as "Charlie."

"sexual examination kit" was completed on A.V. Officer Salazar did not make a diagram of the crime scene and did not take any photos of the inside or outside of the home where P.W. lived.

P.W.'s mother, M.W.[2] testified that on the night in question, she went to sleep around 10:00 p.m. At some point, she woke up because of "a noise that somebody opened the door" of her daughter's room. She saw that her daughter's door was open and saw "two shadows pass by." M.W. went into the kitchen and saw P.W. and A.V. standing in the kitchen doorway. They told M.W. that they had heard a noise in the garage.

P.W. testified that she and A.V. led appellant and Tienter from the garage into her bedroom. After P.W. secured her bedroom, she and Tienter got on her bed. P.W. testified that the only light in her room came in through her bedroom window. However, she could tell that appellant was on her bedroom floor with A.V. P.W. stated that she and A.V. let appellant and Tienter out of the house through the garage. When M.W. confronted them about what had happened, P.W. testified that she lied to her mother and told her that she and A.V. had heard a noise outside the garage.

Kevin Tienter testified that on the night in question, he was at appellant's house. At that time, P.W. and Tienter sent "several texts" to each other, and P.W. invited him to her house. Tienter testified that the purpose of the invitation was for him to have sex with P.W. Appellant drove him to P.W.'s house. Tienter testified that there was no light coming through the window of P.W.'s bedroom. He could hear appellant and A.V., but he could not see them. When defense counsel asked Tienter, "Did you hear any noise of the mouth that would indicate that somebody was providing oral sex to another person?", he said,

---

[2]To protect the privacy of P.W. and her mother, we refer to her by her initials.

"No, sir."  He stated that when he and P.W. were having sexual relations on P.W.'s bed, her "focus" was on him, not on appellant and A.V.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant challenges the legal and factual sufficiency of the evidence to support his conviction.

#### 1. Standards of Review

When conducting a legal sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)) (emphasis in original).  "In doing so, we assess all of the evidence 'in the light most favorable to the prosecution.'"  *Id*. (quoting *Jackson*, 443 U.S. at 319).  "After giving proper deference to the fact finder's role, we will uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element." *Id*. at 518.

In a factual-sufficiency review, the only question to be answered is:  "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?"  *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways:  (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's verdict;" or (2) "considering conflicting evidence, the fact finder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster*, 275 S.W.3d at 518 (quoting *Watson v. State*, 204 S.W.3d 404,

5

414-15 (Tex. Crim. App. 2006)).  When a court of appeals conducts a factual-sufficiency review, it must defer to the jury's findings.  *Id*.  The court of criminal appeals has "set out three 'basic ground rules' implementing this standard."  *Id*. (quoting *Watson*, 204 S.W.3d at 414).  First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict.  *Id*.  Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'"  *Id*.  (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)).  Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict.  *Id*.  Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it."  *Id*.

Our review of a legal and a factual sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge.  *Grotti*, 273 S.W.3d at 280 "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'"  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

### 2. Applicable Law

Section 21.11 of the penal code provides that a person commits the offense of indecency with a child by contact "if, with a child younger than 17 years and not the person's spouse, . . . the person:  (1) engages in sexual contact with the child or causes the child to engage in sexual contact; . . ."  TEX. PENAL CODE ANN. § 21.11(a)(1).  Sexual contact includes the following acts:

> if committed with the intent to arouse or gratify the sexual desire of any person:" "(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

*Id.* § 21.11(c).

A fact finder can infer the requisite, specific intent to arouse or gratify the sexual desire of any person "from the defendant's conduct, remarks, and all surrounding circumstances." *Breckenridge v. State*, 40 S.W.3d 118, 128 (Tex. App.–San Antonio 2000, pet. ref'd) (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)). The testimony of a child victim alone is sufficient to support a conviction for indecency with a child. *Perez v. State,* 113 S.W.3d 819, 838 (Tex. App.–Austin 2003, pet. ref'd), *see* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Tear v. State,* 74 S.W.3d 555, 560 (Tex. App.–Dallas 2002, pet. ref'd).

### 3. Analysis

To prove the offense of indecency with a child by contact as set forth in the jury charge, the State was required to establish beyond a reasonable doubt that appellant "did then and there engage in sexual contact with [A.V.], a child younger than 17 years of age and not his spouse, by then and there touching the genitals of [A.V.], with intent to arouse and gratify the sexual desire of the [appellant], . . . ." In this case, a rational jury could have determined the following from the evidence: (1) appellant and A.V. were together on the floor of P.W.'s darkened bedroom; (2) at this time, appellant told A.V. to "just relax" and asked her, "'Can I eat you out?'"; (3) appellant took off her shorts, "and he started doing oral sex, with his tongue and his finger"; (4) appellant put his tongue and his fingers in her private part; (5) A.V. was fourteen years old at the time, and appellant was thirty-six years old; (6) A.V. was never married to appellant; and (7) after the incident, appellant told A.V.

7

to lie about the perpetrator's identity.

The controverting evidence showed that: (1) P.W.'s bedroom was too dark for P.W. to see what appellant and A.V. were doing; (2) while appellant and A.V. were on the floor in P.W.'s bedroom, P.W. and Tienter were on the bed, engaging in sexual relations; (3) no one saw appellant perform oral sex on A.V.; (4) Tienter did not hear any noise that suggested appellant was performing oral sex on A.V.; (5) after the incident, A.V. did not undergo a sexual-assault examination; (6) when appellant and Tienter left the house, A.V. and P.W. did not tell P.W.'s mother that the two men had been in P.W.'s bedroom; (7) P.W. lied to her mother and a police investigator about what had happened to her; and (8) A.V. initially did not tell her parents the truth about what appellant did to her in P.W.'s bedroom.

First, we note that the jury is the sole judge of the credibility of the witnesses and the weight to be given the evidence, and may choose to believe all, some, or none of it. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Rachal v. State*, 917 S.W.2d 799, 805 (Tex. Crim. App. 1996). Thus, the jury is permitted to believe or disbelieve any part of the testimony of any witness. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998); *Perez*, 113 S.W.3d at 838. "Reconciliation of evidentiary conflicts is solely a function of the trier of fact." *Perez*, 113 S.W.3d at 838 (citing *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)). The jury could have accepted that portion of A.V.'s testimony sufficient to support the convictions and disregarded the inconsistencies. "A decision is not manifestly unjust because the jury resolved the manifestly conflicting views of the evidence in favor of the State." *Cain*, 958 S.W.2d at 409.

8

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient for a rational jury to find appellant guilty beyond a reasonable doubt of indecency with a child by contact. Viewing all of the evidence neutrally, we conclude that the evidence supporting the conviction is not so weak that the jury's determination is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. We, therefore, hold that the evidence is legally and factually sufficient to support the conviction. Issue one is overruled.

**B. Denial of Mistrial**

In issue two, appellant contends the trial court erred by failing to grant a mistrial after the prosecutor made comments about extraneous offenses and bad acts.

**1. Background**

During the State's case-in-chief, Officer Salazar testified that during her investigation of this case, she obtained written statements from A.V. and P.W. After Officer Salazar said this, the prosecutor asked her, "[O]nce you were able to obtain the statements, what were you able to discern?" To this, she said, "That possibly several criminal offenses had occurred." The trial court sustained defense counsel's timely objection[3] to Officer Salazar's answer, and after defense counsel requested an instruction to disregard, the trial court responded as follows: "The jury will disregard the last comment on [sic] the witness." The trial court denied defense counsel's motion for a mistrial.

On another occasion when P.W. was testifying on direct-examination, the prosecutor asked her if she knew where appellant lived. P.W. said that he lived "somewhere here in Edinburg, around the university or college, . . ." When the prosecutor

_____

[3]The entirety of defense counsel's objection was, "Objection, under 404(b), Your Honor."

9

asked her, "How did you learn that?", she said, "He told me that on My Space, when he invited us. He was inviting us to go to his apartment that Kevin was going to be there, too, and some other friends, and there was going to be alcohol and drugs there and the weed was free." The trial court sustained defense counsel's timely objection[4] to P.W.'s answer, and after defense counsel requested an instruction to disregard, the trial court responded as follows: "The jury will disregard the last comment the witness made of what was there- or what was going to be there at the apartment." The trial court denied defense counsel's motion for a mistrial. After the jury returned from its lunch break, the trial court instructed the jury as follows:

> There was testimony earlier this morning, or late morning, that it was [P.W.] testified about some issue of alcohol or drugs. I'm going to instruct you, again, to disregard that completely, and not consider it for any purpose whatsoever. Mr. Nieto is here charged with a sexual assault of a child, count one and two, and an indecency with a child count three, and that's the only thing that he's going to be tried on. So do not consider it for any purpose. All right?

**2. Analysis**

We apply an abuse-of-discretion standard when reviewing the denial of a motion for mistrial. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Cordova v. State*, 296 S.W.3d 302, 311 (Tex. App.–Amarillo 2009, pet. ref'd). A trial court does not abuse its discretion when its decision falls within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Cordova*, 296 S.W.3d at 312.

"[M]istrials are an extreme remedy for prejudicial events occurring during the trial process." *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). "Even when a prosecutor intentionally elicits testimony or produces other evidence before the jury which

---

[4]The entirety of defense counsel's objection was, "We object under 404."

is excludable at the defendant's option, our law prefers that the trial continue." *Id*. "The adversary system thus depends upon a belief that the declaration of a mistrial ought to be an exceedingly uncommon remedy for the residual prejudice remaining after objections are sustained and curative instructions given." *Id*. "For this reason, our system presumes that judicial admonishments to the jury are efficacious." *Id*. (citing *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988)). "On appeal, we generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). "The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions." *Id*. Thus, testimony referring to extraneous offenses can be rendered harmless by an instruction to disregard such testimony, unless it is so clearly calculated to inflame the minds of the jury and is of such a nature that it suggests the impossibility of withdrawing the impression produced. *Cordova*, 296 S.W.3d at 312 (citing *Lusk v. State*, 82 S.W.3d 57, 60 (Tex. App.–Amarillo 2002, pet. ref'd) (citing *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992))). "Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted." *Bauder*, 921 S.W.2d at 698 (citing *Kemp*, 846 S.W.2d at 308).

Here, it is not apparent that the testimony from Officer Salazar and P.W. regarding the extraneous offenses was so emotionally inflammatory that the trial court's curative instructions were not likely to prevent the jury from being unfairly prejudiced against appellant. These complained-of statements are similar in nature to those which courts have found curable by instructions to disregard. *See, e.g., Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (holding that a prompt instruction to disregard will usually cure

error associated with an improper question and answer, even one regarding extraneous offenses); *Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990) (finding that a limiting instruction given after a witness referred to the defendant's prior prison time cured any error); *Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985) (determining that an instruction to disregard a reference to the defendant's status as an "ex-con" sufficiently cured any error); *Coe v. State*, 683 S.W.2d 431, 435-36 (Tex. Crim. App. 1984) (holding instruction to disregard cured error resulting from witness's reference to "other robberies," suggesting the defendant had committed them); *Lachapelle v. State*, 579 S.W.2d 1, 1-2 (Tex. Crim. App. 1979) (explaining that a prompt instruction to disregard cured any error arising out of witness's reference to another case that suggested that the defendant had committed another crime). Moreover, appellant has failed to rebut the presumption that the jury followed the trial court's instructions. In light of the trial court's instructions and appellant's failure to rebut the presumption that the jury followed the instructions, we presume the jury did not consider the statements in their determination of appellant's guilt. We conclude that the trial court did not abuse its discretion in denying the motions for mistrial.

By this same issue, appellant contends the trial court erred by admitting hearsay testimony into evidence. Specifically, he complains the inadmissible hearsay evidence "involve[d] facts regarding [his] resignation" from his place of employment, the RGV Ice Skating Center. On redirect-examination, Officer Salazar testified that during her investigation of this case, she went to the RGV Ice Skating Center in order to speak to appellant. When the prosecutor asked Officer Salazar, "Without telling us what other people told you, I'm asking you, why exactly were you not able to speak with Mr. Nieto [appellant] that day?", she said, "Because he had resigned." Defense counsel did not

12

object to the answer. Next, the prosecutor asked her, "Were you able to gather from your information what date he resigned on?" To this question, defense counsel lodged the following objection: "I'm going to object, Your Honor. Same information. Any information that she had that was acquired from a third-party. The State, in essence, is back-dooring here, Judge." The trial court overruled the objection, and Officer Salazar testified that appellant resigned from the RGV Ice Skating Center on May 9, 2008.

Here, appellant has not cited any authority showing that the information which the State elicited from Officer Salazar constituted inadmissible hearsay. Furthermore, he has cited no authority showing that the complained-of testimony constituted either harmful error or reversible error. Because appellant has inadequately briefed the argument relating to the hearsay issue, the issue is not preserved for our review. *See* TEX. R. APP. P. 38.1(i); *Garza v. State*, 290 S.W.3d 489, 490-91 (Tex. App.–Corpus Christi 2009, pet. ref'd). Issue two is overruled.

## C. Ineffective Assistance of Counsel

In issue three, appellant contends his trial counsel was ineffective because he allowed the State, on direct-examination, to ask numerous leading questions of a witness.

### 1. Standard of Review

*Strickland v. Washington* defines the components required to show ineffective assistance of counsel. 466 U.S. 668, 687 (1984). The two required components are a performance component and a prejudice component. *Id*. First, the defendant must show that counsel's performance was deficient, which requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy this prong of the analysis, the defendant "must show that counsel's representation fell

13

below an objective standard of reasonableness" based upon "prevailing professional norms." *Strickland*, 466 U.S. at 688. For this performance inquiry, we consider all the circumstances with "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 688-89.

Second, the defendant must show that counsel's deficient performance prejudiced the defense. *Perez*, 310 S.W.3d at 893. This requires the defendant to show that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. (citing *Strickland*, 466 U.S. at 687). To satisfy this element, the "'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). The defendant has the burden of proving ineffectiveness by a preponderance of the evidence. *Id*. (citing *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005)).

**2. Analysis**

During the State's redirect-examination of Tienter during the guilt-innocence phase, appellant calls our attention to several instances where the prosecutor asked leading questions:

> Prosecutor: Now, Kevin, isn't it true that this was the first time that you were going to have sex?
>
> Mr. Tienter: Yes, it is.
>
>                       * * *
>
> Prosecutor: It's pretty fair to say that you were not focused on anything else that was going on in that room [P.W.'s bedroom], correct?
>
> Mr. Tienter: That's correct.
>
> Prosecutor: And so it is pretty fair to say that you had no idea, and you

14

cannot tell this jury, whether or not Nieto [appellant[ and [A.V.] had sex or not.  Is that correct?

Mr. Tienter:   That is correct.

\* \* \*

Prosecutor:   And isn't it a fact that Carlos Nieto [appellant] gave you the condoms, right then and there?

Mr. Tienter:   Yes.  In that room.

\* \* \*

Prosecutor:   You mentioned earlier there were lights in the street when they [P.W. and A.V.] opened the garage door.  Correct?

Mr. Tienter:   Yes.

\* \* \*

Prosecutor:   Well, at night, if there are street lights, there is at least some moonlight coming in, is that correct?

Mr. Tienter:   There has got to be, . . .

\* \* \*

Prosecutor:   Okay. You testified earlier you met "Charlie" [appellant] in 2007-2006?

Mr. Tienter:   I've known him for two years.

\* \* \*

Prosecutor:   Isn't it a fact that you would want to try to help your "buddy" out, isn't that correct?

Mr. Tienter:   In this case now?

Prosecutor:   Yes.

Mr. Tienter:   I'm not.

Prosecutor:   So the entire rest of the time that you were sitting there after you had sex, you just sat there, and were completely quiet, is that right?

15

Mr. Tienter:   I understand the question, but I just don't remember after we were done.  I just remember the door hitting.

Defense counsel did not object to any of these questions.  However, even if defense counsel's failure to object constituted deficient performance, appellant has failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   *See Strickland*, 466 U.S. at 694.  Furthermore, if counsel's reasons for his conduct do not appear in the record and there is "at least the possibility" that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal.  *Garza v. State,* 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).  Issue three is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of August, 2010.